W. D. BLOXHAM, COMPTROLLER, AND JOHN A. PEARCE, SHERIFF, APPELLANTS, VS. FLORIDA CENTRAL AND PENINSULAR RAILROAD COMPANY, APPELLEE.

1. A claim that the exemption of certain railroad property from taxation provided for in the eighteenth section of the Internal Improvement act (Chapter 610 laws of Florida, act of 1855-6, McClellan's Digest, sec. 21, page 596) is a continuing exemption, that is an incident of the property attached to the *rem*, and follows it into whosoever hands the same may come, can not be maintained.

2. That the right of exemption from taxation which under the Internal Improvement act, referred to in the preceding headnote, vested in the original owners and builders of the roads

40

exempted, was a personal privilege, and did not pass with the assignment of the property, is by the decision of the Supreme Court of the United States, in the case of *Louisville and Nashville Railroad Company vs. Palmes*, 109 *U. S.*, 244, a proposition beyond the reach of cavil or controversy, and is no more open to discussion in this State.

3. No corporation can be created in this State since the adoption of the Constitution of 1868, or the amendments of 1875, capable of accepting and enjoying the privilege of exemption from taxation provided for in the eighteenth section of the Internal Improvement act, referred to in preceding head-notes.

4. Railroads built or acquired by corporations coming into existence after the adoption of our Constitution of 1868, whether in the hands of the original building corporations or their assignees and successors, were liable to taxation under that Constitution in like manner as other property.

5. A State can not be sued without its consent. The suit in the court below, while against two officers of the State named as defendants, was, as to one of the objects sought to be accomplished by it, to all intents and purposes a suit against the State for the recovery of money, and a judgment or decree against such officers would have been a judgment or decree against the State. This branch of the suit should have been dismissed for want of jurisdiction.

6. By saying that a State can not be sued without its consent, as stated in preceding head-note, it is not meant that no judicial action under any circumstances whatever can be taken against the State, but, confining ourselves to the facts of this particular case, that a suit like that before us—a suit for the recovery of money—whether in the form of a bill in equity, or in the nature of an action of assumpsit, does not lie against the sovereign State.

7. The Constitutions of this State, both of 1868 and 1885, contain a section as follows: "Provision may be made by general law for briging suits against the State as to all liabilities now existing or hereafter originating," but no such provision having been made by the Legislature, these sections were inoperative to change the general principles upon which we hold that the State is not liable to be sued.

8. Appellee claimed that it is entitled to have certain railroad property exempted from taxation, because it and its predecessors contracted and invested their money in the property under a

judicial construction once prevailing in this State declaring that the exemption provided for in the eighteenth section of the Internal Improvement act attached to property of this kind as an incident, without regard to changes in ownership of the same; that they relied upon such judicial construction, and invested their money upon faith in the exemption from taxation therein declared: *Held,* Without determing the effect of such judicial construction, that appellee should not have its property declared exempt from taxation by reason thereof, because the more important and vital question as to whether the appellee or its predecessors were such corporations as under the Constitution of 1868 could avail themselves of such exemption from taxation, had not been determined in this State, and upon the proper determination of this question the property would be liable to taxation in the hands of appellee and its predecessors without reference to the judicial construction referred to. It can not avail appellee that the property was exempt from taxation if it and its predecessors were such corporations as were prohibited by the Constitution from holding the same as exempt.

9. All property in the State ought to bear its just burden of taxation, and there can be no doubt, because it is well established by authority, that if property lawfully liable thereto escapes taxation for any one or more years, it is competent for the Legislature to provide for the collection of such taxes in arrears from the owners of the property during the time for which it escaped taxation, or from purchasers of the same, whose rights or titles accrued after a lien for such taxes had been acquired by the State by subjecting the property taxed to the payment of the same.

10. When the time for the assessment and collection of taxes has passed, and the taxing statute affixes no lien to the property, the State has made no assessment, or taken any other step to collect the same, real estate can not be pursued for back taxes when it has gone into the hands of innocent purchasers for value. Railroads, under the statute of this State, are real estate.

11. Under our laws, as they existed prior to the adoption of the Revised Statutes, there was no lien upon real estate for its taxes until fixed by an assessment of the same.

12. We hold that under the facts and circumstances of this case, upon principles of law stated in the next three succeeding head-notes, that the appellee was not an innocent purchaser for value of the property sought to be subjected to taxation.

13. A transfer of property subject to taxation by persons in their individual capacity to themselves as constituting a corporation, does not constitute such corporation an innocent purchaser of said property so as to defeat the State's claim for taxes thereon.

14. When a new corporation is created by the consolidation of two or more other corporations, and no provision is made by statute or the articles of incorporation for the payment of the debts and liabilities of the constituent corporations, the new corporation assumes all the debts and liabilities of the constituent companies, which follow as an incident of the consolidation; and under such circumstances such consolidated corporation is not an innocent purchaser for value of the property of its constituent companies, so as to prevent the State from subjecting the same to payment of taxes thereon.

15. A corporation from whom taxes are due the State can not defeat the collection thereof by vesting its property subject to taxes in another corporation, of which it remains a constituent part.

16. Lines of railroad which were not in existence during the years 1879, 1880 and 1881 can not be taxed for those years that passed away before they were built; neither can they be subjected to sale for payment of taxes due upon other railroads by reason of the accidental circumstance that they have become the property of the same corporation that owns the roads liable to taxation.

17. The act of 1885 (Chapter 3558 laws of Florida) is general in its terms, embraces all of a class—all railroads in a similar condition. It is not a special or local law for the assessment and collection of taxes, but is of general and uniform operation throughout the State, and is not in conflict with any provision of the State Constitution.

18. The courts can not be influenced in their action by objections which apply not to the constitutionality, but only to the policy, the justice and wisdom of the law. The relief from such legislation, if the objections urged are well taken, must come from the legislative, and not the judicial department of the government. The courts are bound to uphold the statutes unless they are clearly in conflict with the Constitution.

Appeal from the Circuit Court for Leon county.

### STATEMENT.

The Florida Central and Peninsular Railroad Company filed its bill in equity in the Circuit Court of Leon county against William D. Bloxham, as Comptroller of the State of Florida, and John A. Pearce, as sheriff of said county.

Omitting the formal parts, the bill of complaint was as follows: That the complainant is a corporation duly organized under the laws of Florida, under letters patent of date 17th November, 1888, and owns a line of railroad in said State, which is composed of the several lines of road organized and constructed under authority of the laws of Florida, as hereinafter set forth.

### A.

Of a line of railroad from Jacksonville to Lake City, in the State of Florida, which was built by a company known as the Florida, Atlantic and Gulf Central Railroad Company, duly chartered and organized under the laws of the State of Florida, Chapter 481 thereof, and the several acts amendatory thereof.

### B.

Of a line from Lake City to Quincy, in the said State, with a branch from Drifton to Monticello, both in the county of Jefferson thereof, which was built by a company known as the Pensacola and Georgia Railroad Company, duly chartered by and organized under Chapter 484, laws of Florida, and the several acts amendatory thereof.

### C.

Of a line of road from Tallahassee to St. Marks, in said State, which was built by a company known as the Tallahassee Railroad Company, and chartered by and organized under the laws of Florida, Chapter ——, and the acts amendatory thereof.

### D.

Of a line of road from Quincy to Chattahoochee, in said State, which was built by a company known as the Jacksonville, Pensacola and Mobile Railroad Company, chartered by and organized under the laws of the State of Florida, Chapter 1716 of said laws, and the acts amendetory thereof.

### E.

Of a line of road from Fernandina to Cedar Keys in said State, built by a company known as the Florida Railroad Company, which was chartered by and organized under Chapters 482 and 729 of the laws of Florida, and the several acts amendatory thereof.

### F.

Of a line of road from Waldo to Ocala, in said State, which was built by a company known as the Peninsular Railroad Company, chartered by and organized under Chapter 729 and its amendatory acts aforesaid.

### G.

Of a line of road from Ocala to Wildwood, in said State, which was built by a company known as the Tropical Florida Railroad Company, under the authority of Chapter 729 aforesaid.

### H.

Of a line of road from Wildwood to Tavares, which was built by a company known as the Leesburg and Indian River Railroad Company, organized under the general laws of Florida, Chapter 1987, and the acts amendatory thereof.

### J.

Of a line of road from Jacksonville to Harts Road, which was built by a company known as the Fernandina and Jacksonville Railroad Company, also organ-

ized under Chapter 1987 of the general law on the sub-
ject of railroads and canals, and its amendatory acts.

### K.

Of a line from Wildwood to Plant City, built by the
Florida Railway and Navigation Company, on its route
to the waters of Tampa Bay.

### L.

Of a line from Tavares to Orlando, built by a com-
pany known as the Tavares, Orlando and Atlantic Rail-
road Company.

### M.

And of a line of railroad from Plant City to Tampa
in completion of its line to the waters of Tampa Bay,
and built by complainant.

That the several roads as above indicated were con-
structed and in operation about as follows:

A, B, C, as above designated, for years prior to 1865.
D as above designated, in 1869–71.
E as above designated, for years prior to 1865.
F as above designated, in 1877.
G as above designated, in 1881.
H as above designated, in 1883.
J as above designated, in 1880.
K as above designated, in 1887.
L as above designated, in 1887.
M as above designated, in 1891.

That the several acts, under authority of which these
several lines of railroad were constructed, are hereby
adopted by this complainants as parts of its said bill,
with the usual reference to their several provisions, as
though fully set out herein.

That in the year A. D. 1855, which was prior to the
construction of any of the aforesaid lines of railroad,
the Legislature of the State of Florida, under the au-

thority of the Constitution of said State, passed a law commonly and hereafter called the Internal Improvement act of Florida, and numbered as Chapter 610 laws of Florida, approved January 6th, 1855.

That the Constitution of the State of Florida in force at the time of the passage of said act, Chapter, 610, aforesaid, authorized and directed the Legislature to provide for and encourage a liberal system of internal improvements.

That the act aforesaid, Chapter 610, created a public fund, called the Internal Improve Fund of Florida, and vested the same in certain trustees, and invested the fund with a large and very valuable quantity of lands, and declared the construction of certain railroads and canals within the State of Florida as works of public improvements which should be aided by the State out of said fund.

That at the date aforesaid the State of Florida, with its area of 50,000 square miles, had an aggregate population of less than two to the square mile, two-fifths of whom were slaves. That she had not one mile of railroad propelled by steam, and only one tramway of 22 miles pulled by mules. That her population was as poor as it was sparse, and her people with their own available resources were totally unable to perfect any works of improvement in the way of encouraging settlement and facilitating the development of its resources, and the utilizing of its commercial advantages. That the approbation of the people was given to the grant of all constitutional aid to the works of internal improvement so as aforesaid, declared as proper to be aided by the provisions of said act.

The lines of railroad hereinbefore described as A, B, C, D, E, F, G, K and M, were those constructed and authorized so to be, by this act and their respective char-

ters, in compliance with the fourth section of said act, and were parts and parcels of those lines therein declared to be proper improvements to be aided from the State fund in the manner indicated in said acts.

That of the several railroad companies hereinbefore referred to, there had been chartered previous to the date of this act only the Florida, Atlantic & Gulf Central Railroad Company, the Tallahassee Railroad Company, The Pensacola & Georgia Railroad Company, and The Florida Railroad Company, but each of these companies chartered by the Legislature, and any that might thereafter be chartered, any portion of whose routes might be within the lines or routes so declared to be proper improvements for aid, as aforesaid, should have the rights and privileges of constructing that part of the said lines embraced in their charters; and all the portions of the lines of complainant, which include all of its said line of road except so much thereof as is built between Wildwood and Orlando, and between Jacksonville and Hart's Cross Roads, were authorized to be built within the said lines or routes entitled to receive the aid given by said act and its amendments.

Your orator would show that by reference to said Internal Improvement act and the said act incorporating the said railroads, it would appear that the State of Florida did not reserve any right to alter or amend, or repeal said acts, nor was there any law then in force prior to their enactment which authorized such repeal, alteration or amendment, nor was there any law applicable to the said railroads inconsistent with the provisions of said Internal Improvement act and said acts of incorporation, with regard to tax on railroad property and the exemptions thereon, and it was the intent of the Legislature at that time, and the peo- of the State and said Legislature have shown the in-

634                SUPREME COURT.

Bloxham, Comp., et al. v. F. C. & P. R. R. Co.—Statement of Case.

tention ever since, (as by reference to the various laws touching the subject of exemption of railroad property from taxation will appear) that the exception contained in said Internal Improvement act and said acts of incorporation should be continued in full force and effect during the term prescribed in said acts, and particularly should so continue in favor of the road from Fernandina to Cedar Keys, with branch to Tampa.

That the act, Chapter 3558 laws of Florida, author-izing the assessment of taxes on certain railroad property to pay the same for the years 1879, 1880 and 1881, did not specify the property of the Florida Railway & Navigation Company and its constituents as liable to taxation, and the same was in fact exempted at the time of the passage of said act, and the State officers had no authority to levy upon said property for such taxes.

Your orator would further show that although the State Constitution of 1868 enacted that no railroad property thereafter should be exempted from taxation, yet that said State Constitution was inconsistent with the Constitution of the United States, in that it sought to deprive the companies then owning the property now belonging to the complainant of vested contract rights to such exemption, and that said State Constitution abrogated the contract at that time in force between the State and the said railroad companies, and illegally impaired the obligations imposed thereby upon the State of Florida, and is therefore null and void.

That among the grants given to said lines of road by said acts, and so given in aid of the construction of said lines of road, and without reference or limitation as to the proprietorships therein, or to any changes in such ownership, were:

The exemption of the capital stock of any railroad company accepting the provisions of said act, forever from taxation; and

The exemption of the roads, their fixtures and fixtures and appurtenances, including their shops, warehouses, vehicles and property of every description needed for the purpose of transportation of freight and passengers, or for the repair and maintenance of the roads, from taxation, while the roads are under construction, and for the period of thirty-five years from their completion.

The line of railroad herein designated as "A," between Jacksonville and Lake City, was built by its Company, the Florida, Atlantic & Gulf Central Railroad Company, which accepted the provisions of said act, according to the provisions of the act, and was accepted by the trustees of said Internal Improvement Fund as a completed line on the —— day of ——, A. D. 1866.

The Pensacola & Georgia Railroad Company likewise accepted the provisions of said act for its entire line to Pensacola, and built the line of railroad designated as "B," between Lake City and Quincy, with branch to Monticello, and acquired the line of the Tallahassee Railroad between Tallahassee and St. Marks, "C," which was also built in accordance with the terms and requirements of said Internal Improvement act, and they were accepted as a complete road by the trustees of the Internal Improvement Fund on the —— day of ——, A. D. 1866.

The Florida Railroad Company also accepted the provisions of the Internal Improvement act, and built according to its terms the line of road between Fernandina and Cedar Keys, herein designated as "E," which was accepted by the trustees, and was a completed

SUPREME COURT.

road, according to the provisions of said act, on the —— day of ———, A. D. 1864. The Florida Railroad Company likewise accepted the provisions of said act, Chapter 610, for so much of the line of complainant's road as lies between Waldo and Tampa Bay, which was constructed when and in the manner as hereinafter stated.

For noncompliance with the requirements of the Internal Improvement act as aforesaid in the payment of semi-annual interest due upon completed roads to the sinking fund of the said Internal Improvement Fund, the following roads were seized and sold by the trustees of the Internal Improvement Fund under the provisions of said act; and were bought, and afterwards owned and operated as follows, that is to say: For such defaults—

A. The Florida, Atlantic & Gulf Central Railroad, and all of its property of every kind, was seized by the trustees of the Internal Improvement Fund and legally sold on the fourth day of March, A. D. 1868, to William E. Jackson and his associates, who, under the provisions of the Internal Improvement act aforesaid, Chapter 610, and of an act approved July 29th, 1868, being Chapter 1646 laws of Florida, were vested with the powers and franchises granted to the Florida, Atlantic & Gulf Central Railroad Company, and were made and thus became a body politic and incorporate under the name of the Florida Central Railroad Company, and as such and until, as hereinafter stated, the said Florida Central Railroad Company owned and operated the lines of this complainant's road, "A," from Jacksonville to Lake City, as aforesaid.

B. The Pensacola & Georgia Railroad; which included the road to St. Marks, and all its property, for like default was in like manner seized and legally sold

on the second day of March, A. D. 1869, to F. Dibble and associates; and subsequently, under the provisions of said Internal Improvement act and the provisions of an act entitled "An act to perfect the public works of this State," being Chapter 1716 of the laws of Florida, and the acts amendatory thereof, the said associates or their assigns were made a body corporate and entered as owners into the possession of the line of complainant's railroad from Lake City to Quincy, and from Drifton to Monticello, and the road from Tallahassee to St. Marks, and owned and operated the same under the name of the Jacksonville, Pensacola & Mobile Railroad Company, until as hereinafter set forth.

E.    The Florida Railroad, with all its property of every kind, which is so much of the complainant's line of road as lies between Fernandina and Cedar Keys, was for like default in like manner seized and sold on the first day of November, A. D. 1866, to Isaac K. Roberts and his associates, who, under the provisions of the said Internal Improvement act, Chapter 610 laws as aforesaid, and of Chapter 482 laws of Florida, and its amendatory act, became the owners of said line of road, and thence after, until as hereinafter stated, operated the said line of road as a body corporate, under the name of the Florida Railroad Company.

That between the years A. D. 1871 and 1873 the Jacksonville, Pensacola & Mobile Railroad Company built and completed, and thence after, until as hereinafter stated, operated the portion of complainant's line of road herein designated as "D," and being that part thereof which is between Quincy and Chattahoochee, and which is upon the line or route declared by act, Chapter 610, to be proper to be aided by the provisions of said act.

That under and by virtue of the provisions of the charter of the Florida Railroad Company, Chapter 729 laws of Florida, the president and directors of the said Florida Railroad Company, on the 22d day of April, A. D. 1876, set off the construction of that portion of their line, and of the line of this complainant which is between Waldo and Ocala, to persons desirous of constructing the same, and such persons, under the authority therein given to have a distinct organization, associated themselves together as a body corporate under the name of the Peninsular Railroad Company, which built, and thence after, and until as stated herein, operated the portion marked "F," of complainant's line of railroad between Waldo and Ocala, and which was completed on the first day of January, A. D. 1879.

That by the same authority the proper officers of the Florida Railroad Company, on the 22d day of January, A. D. 1881, set off to persons desiring to construct the same, the right of constructing so much of its said line of road as was between Ocala and the waters of Tampa Bay, and such persons, under the authority therein given to have a separate organization, associated themselves together as a body corporate under the name of the Tropical Florida Railroad Company, and built that portion of said line, and of this complainant's line, which lies between Ocala and Wildwood, and is marked "G," in the years A. D. 1881 and 1882.

That under the terms of the statutory mortgage created by Chapter 1716 laws of Florida, all that portion of complainant's line between Jacksonville and Chattahoochee, and including the branch to Monticello and the St. Marks road, was, on the twenty-fifth day of September, A. D. 1879, sold under decree of foreclosure

to Edward J. Reed, who, together with his associates, organized a company under the general laws of the State of Florida, known as the Florida Central & Western Railroad Company, which latter company was by deed of the said Reed, dated 28th of February, 1882, invested with all the rights, privileges and immunities covered by said mortgage, and of the charters and statutory benefits of the several constituent companies, but without becoming in any way obliged to pay any of the debts or obligations of any of such companies.

On the 30th day of March, A. D. 1880, the Fernandina & Jacksonville Railroad, being that portion of complainant's line which is between Jacksonville and Hart's Cross Roads, and herein marked as "J," was built by a company having the name of the railroad, the company organized under the general law, Chapter 1987, of the State of Florida.

On the 18th day of January, A. D. 1872, the name of the Florida Railroad Company was changed to the Atlantic, Gulf & West India Transit Company, by Chapter 1918 laws of Florida.

Under a decree of the Circuit Court of the United States for the Northern District of Florida, in a suit between Doggett, receiver, and the Atlantic, Gulf & West India Transit Railroad, for the enforcement of the payment, to the use of the Trustees of the said Internal Improvement Fund, of a sinking fund for the redemption of certain of the bonds of the Florida Railroad Company, which were issued under the provisions of the said act, Chapter 610, and which had not been returned by the sale of said line of road in 1868, as aforesaid, but were still outstanding, so much of your orator's road as then belonged to said company, being that portion which lies between Fernan-

dina and Cedar Keys, with all of its property and franchises, was sold by J. C. B. Drew, master, to Edward N. Dickerson and C. D. Willard, trustees, and thereupon these trustees, for themselves and their associates, formed the Atlantic, Gulf & West India Transit Company, under the said act of 1853, Chapter 482, and Chapters 610 and 729, and the act of January 25th, 1869, respectively. This company's name was changed in 1881 to the Florida Transit Railroad Company.

On the 22d day of December, A. D. 1882, the following companies were consolidated into one company, according to the laws of Florida, *viz:* The Atlantic, Gulf & West India Transit Company, The Peninsular Railroad Company, The Tropical Florida Railroad Company. The company thus formed was called the Florida Transit & Peninsular Railroad Company.

On the 29th day of February, A. D. 1884, the Florida Transit & Peninsular Railroad Company, the Florida Central & Western Railroad Company, the Fernandina & Jacksonville Railroad Company, and the Leesburg & Indian River Railroad Company were consolidated into one company. The company so formed was called the Florida Railway & Navigation Company.

The Florida Railway and Navigation Company built its line of railroad from Wildwood to Plant City, and completed the line begun by the Leesburg and Indian River Railway Company to Tavares.

The several companies thus consolidated had bonded indebtedness incurred by construction and operation as aforesaid, and severally secured by deed of trust on their respective lines, which were outstanding, as follows:

The Florida Transit Railroad Company, on May 10th, 1881, issued $1,000,000 of 6 per cent. bonds due March 1st, A. D. 1911.

The Peninsular Railroad Company, on August 11th, 1878, issued $350,000 of 7 per cent. bonds due August 1st, 1900.

The Fernandina and Jacksonville Railroad Company, August 11th, 1880, issued $300,000 of 7 per cent. bonds due March 1st, A. D. 1900.

The Florida Central & Western Railroad Company, on 9th March, 1882, issued $2,808,000 of 6 per cent. bonds due March 1st, 1922; for defaults in the payment of interest on which bonds it was provided in each case that the entire indebtedness should, at the election of the trustees of the respective bondholders, become due and payable, principal and interest. To secure the consolidation of the several companies as herein stated into the Florida Central & Western Railroad Company, and of other companies into the Florida Transit & Peninsular Railroad Company, mutual concessions were necessary, and your orator avers that each of said changes and consolidations were made by radical changes in the holdings of the capital stock of said company, and that with each and every of such changes and consolidations, parties not before interested in the one and the other of said constituent companies thus became *bona fide* holders of legal estates in such companies, from the respective dates of said consolidations and changes, and entitled to the protection of the existing laws to their property from and after the respective dates of such several acquisitions. And in like manner, it is true that the consolidations of the aforesaid several companies into the Florida Railway and Navigation Company was ac-

41

complished with like changes of interest, and with the acquirement of new interests by the several holders of the capital stock of said last company, and holders thereof from the date of such consolidation became *bona fide* holders of proprietary interests in each of said constituent properties. And which interests were then acquired subject to the laws of such property, as they then existed and entitled to the protection of such laws. Such existing laws were a part of the contract under which they thus acquired their said property. That such changes of holdings were equal to more than one-half in value of each and every of said properties.

Your orator avers that the effect of the legislation hereinbefore set forth was an exemption of all its lines of road which were built on the lines indicated in the 4th section of the Internal Improvement act from taxation while under construction, and for a period of thirty-five years from the date of the completion of the several integral parts, as herein set forth, none of which limitations of time have expired. That the exemption as aforesaid was an immunity given as a consideration for the construction of the said several lines of railroad, and was in the nature of an additional value to said roads, over and above their values as determined by the volume of business to be done by them, or the earnings their owners received from such sources. And your orator avers that such immunity was an inducement, and a controlling inducement, to the investment of the moneys which were necessary to be expended in the construction of each and every the parts aforesaid of said separate lines of road on the routes indicated in said Internal Improvement act.

By reason of which promises your orator avers that the exemption of said lines of railroad from taxation

JANUARY TERM, 1895.    643

Bloxham, Comp., et al. v. F. C. & P. R. R. Co,—Statement of Case.

for the several periods of time as alleged, became, by contract of the State, for the consideration aforesaid, a part and parcel of the property value of said roads, and was not intended to be, and never was in fact a personal privilege of gratuity to the corporations respectively that built said lines of road or either or any of them. That the primary purpose of this legislation was the construction of the works belonging to the system devised by the said Internal Improvement act, Chapter 610 laws of Florida, and not the extension of aid or bounty to the corporations that had or might acquire the right to construct the works designated therein, and this exemption became a part of the value of the property of the railroad, which your orator acquired, in its acquisition of each and all of its said lines of the routes included in said system. That this was the law of the property as declared by the courts of the State of Florida, when the Florida Railway and Navigation Company acquired the same.

Your orator charges that neither the said Internal Improvement act, Chapter 610, nor neither of the acts amendatory thereof, wherein was granted the exemption from taxation on the properties of your orator, nor either of the acts under which said several lines of road were constructed, contained any provision for, or any reservation of, power in the Legislature of Florida to alter, amend or repeal the said immunity of exemption from taxation as herein set forth. Wherefore it says that any and every act of the State of Florida, either through amendment of its Constitution, or by act or resolution of its Legislature, in so far as it was thereby attempted to revoke, repeal or annul the said exemption from taxation, was in violation of the rights of your orator as guaranteed by the Constitution of the United States, which does not permit

vested rights under previous contracts to be impaired by subsequent enactments.

That the act or resolution under which the said Barnes claimed to assess back taxes for the years 1879, 1880 and 1881 upon the Florida Railway and Navigation Company, was not a law of the State of Florida, and if a law, does not specify that company, and was not applicable to it, and the act of such assessment being in violation of your orator's previously conceded and enjoyed exemption, is null and void.

That this exemption from taxation was accorded the several portions of your orator's line until the year A. D. 1885, when William D. Barnes, in his capacity of then Comptroller of public accounts for the State of Florida, made an assessment of taxes upon the several companies then controlling the several parts of this line, for State and county purposes. A copy of this assessment is hereto attached, and marked exhibit A, and made a part of this bill for all purposes of reference.

That this assessment was null and void, as appears on the face of it, for, among others, the following several reasons:

The Florida Railway & Navigation Company did not exist, had not been created, and could not, and did not own the property assessed, or any property in the State of Florida, or elsewhere, during the years 1881, 1882 or 1883, or either of them, nor in 1884 except as herein stated.

The assessment was made in Gadsden county against the Florida Railway, Navigation & Telegraph Company; that in other counties there was no assessment of values, as in Baker and Wakulla counties; that there was apparent misnomers, and failures definitely to assess properly *pro ratas* of rolling stock, as in the assessments of

Alachua county, although the assessment that was made therefor was upon an aggregate in excess of the valuation of the entire property.

The assessment made for Clay county exhibited an error of $7,000 in the aggregate of valuation; that the assessment was confused and misleading in stating and scheduling rolling stock as realty, as in Levy, Gadsden, Suwannee and other counties, and as personal property, as in the counties of Duval, Baker, Bradford, Leon and other counties.

That the assessment was not upon a uniform basis of value for the same kinds of property, as in the instance of the assessment of certain lines of telegraph of your orator at $50, when, for the same years, the telegraph lines of the Western Union Telegraph Co., whose lines were as good or better than those of your orator, were only assessed at $10 per mile.

The line of railroad then belonging to the said Florida Railway & Navigation Company was on the 30th day of May, A. D. 1885, advertised for sale by the sheriff of Alachua county, by virtue of a warrant issued by the said William D. Barnes, as Comptroller as aforesaid, and the said sheriff, and the said Comptroller, threatened to sell the said property of said company for the taxes so assessed against it for the years 1881, 1882, 1883 and 1884. That not only was it the intention of said officers to make a sale of said railroad on said account, but your orator charges that they then, and on that day, distinctly stated to its officers and agents that it was the intention of the Executive of the State to forcibly put the purchaser of said road, at such sale, into the possession of said road. Whereupon, under the duress of the great wrong and injury that was then unlawfully threatened to said property, and because the said Florida Railway & Nav-

igation Company was powerless to protect itself from the wrong in the premises, the said company paid to the defendant, the State Comptroller, as aforesaid, under protest that it was arbitrarily, illegally and forcibly extorted from it, the amount of the taxes which had been assessed as aforesaid against it and its constituent properties, amounting to the sum of $140,812.-47, and your orator attaches hereto, as exhibit "B," a copy of the receipt for the same, and the protest of said company against the payment as aforesaid, signed by said William D. Barnes, Comptroller as aforesaid, and which it makes a part of this its bill.

That on the eighteenth day of October, A. D. 1885, the said William D. Barnes made an assessment on the lines of the Florida Railway & Navigation Company, under the authority of an act of the Legislature of the State of Florida, being Chapter 3558 of the same, approved on the 12th day of February, A. D. 1885, for taxes on said lines of road of the State of Florida and the several counties, as indicated in a copy of said assessment which is hereto attached and marked exhibit "E," and which is made a part of this bill, for the years 1879, 1880 and 1881.

And your orator charges that said assessment is illegal and unjust, and without any true warrant of law; that the pretended act authorizing the same is unconstitutional and in violation of the contract and other rights of the Florida Railway & Navigation Company, and of its stockholders, and of its bondholders, and each and every of them, and of your orator succeeding to the rights of such bondholders, as hereinafter stated, and is likewise wrongful, injurious, unjust and oppressive to your orator, and it specifies among other reasons that the same is so:

That when the Florida Railway & Navigation Company acquired its said line of road, there was no lien in existence of such an assessed tax, and no notice of, or even intimation of, an intention to claim for the State of Florida a right to make such assessment; that by the law which was in force when it acquired the line of its road, which includes the portion of its line covered by this assessment, there was no assessment thereon for the years 1879 or 1880, and an assessment thereon for 1881, which had been paid as aforesaid. That the law so in force then expressly prohibited the taxing power from taxing said company's road, or any other property in the State, even in case the same had been improperly omitted from the taxing rolls, and had thus improperly escaped taxation, for more than three previous years from the time of making an assessment.

Your orator further avers that there were properties of large values, to-wit: lands in the counties of Madison, Suwannee, Alachua and Columbia, and in other counties of this State, and lands elsewhere in the State, which were improperly omitted from assessment for taxes during the years A. D. 1879, 1880 and 1881, and each of them, and that the act aforesaid, to-wit: Chapter 3558 laws of Florida, was unconstitutional and void, in that the said Chapter 3558 did not provide for a uniform and equal rate of taxation; and, further, that it did not attempt to secure a just valuation and assessment for all classes of property, but was enacted to reach only property of the class with that of your orator. And there was no law at the time of its passage for reaching the other classes of property as alleged in this bill, which were omitted from assessment, and which thereby escaped taxation for said years. Nor has any law been since enacted to correct

the inequalities in assessments and to remedy the wrong done to your orator's property.

Your orator alleges that at the time the Florida Railway & Navigation Company was organized as a corporation, and acquired its line of road as aforesaid, it found the properties which were then in existence, and which are now of your orator's line of road, assessed for the year A. D. 1880, as in exhibit "C" hereto attached will more fully appear. And your orator insists that it was an exhaustion of the State's and the tax-making power over the property when the assessment was made, and the time provided by law for correcting errors therein had expired, which time has long since elapsed, in so far as the same could be made a lien on the property itself. And your orator avers that the right to levy any additional tax on the values of said property, if it exists at all, exists only as against the owners at the time of the property, and that the same is not now a lien on the property of your orator. And that any law of subsequent enactment which attempts to create a lien in this property, in the hands of purchasers for value, is void.

Your orator further shows unto your honor that on the 1st day of July, A. D. 1884, the Florida Railway & Navigation Company made an issue of $10,000,000 of first mortgage coupon bonds, and made its certain deed of trust to all of its property, including the several lines of railroad as designated herein, to secure the payment of said bonds, principal and interest; and that by the terms of said bonds and mortgage, it was provided that on defaults in payment of interest of said bonded indebtedness the whole principal and interest of said bonds should become immediately due and payable. That it disposed of for value, and to bona fide holders, more than $5,000,000 of said bonds,

all of which was done and accomplished prior to the date of the assessment, as last herein complained of, by the said William D. Barnes.

That one of the purposes of said bond issue was to retire underlying bonds of the several constituent companies forming the F. R. & N. Co., as hereinbefore stated, but that the purpose so to do has been entirely futile, and such underlying bonds were not redeemed.

That on the 26th day of October, 1885, for the failure upon the part of the said Florida Railway & Navigation Company to pay to W. Bayard Cutting the amount of money hereinbefore stated to have been paid W. D. Barnes, Comptroller of the State of Florida, on account of the taxes as paid, and which sum was borrowed from the said W. Bayard Cutting for that purpose, and judgment at law thereupon, and for defaults in the payment of the interest of its consolidated bond and for the payment of the interest on each of the underlying bonds as hereinbefore stated, which defaults had continued the required time and for the adjustment by the said several trust companies, that by reason of said defaults and the continuation thereof the whole of the said bonded indebtedness, principal and interest, was due and then payable, the lines of the railroad of the Florida Railway & Navigation Company, as it then existed, was upon bills duly filed by the said W. Bayard Cutting, and by the said several trust companies representing the holders of said bonds in the Circuit Court of the United States for the Northern District of Florida, for the foreclosure of said liens and for the sale of the property thereunder.

That on that date H. Rieman Duval was appointed Receiver of the said court, and took the said property into his hands as receiver; that afterwards, to-wit: on the —— day of March, and the —— day of July, 1889,

650　　　　　SUPREME COURT.

Bloxham, Comp., et al. v. F. C. & P. R. R. Co.—Statement of Case.

under decrees rendered in each of the said several causes, the entire properties were sold severally under their first liens and as a whole under the lien of the mortgage created by the Florida Railway & Navigation Company.

That the amounts realized from said sale were far short of even the accumulated interest on said indebtedness, and with the exception of one case, was far less than the interest on each particular indebtedness.

That W. B. Cutting, as agent, bought the said property, and he and his associates organized the complainant company in this cause, and the company was admitted into the possession of the property so bought, all terms and conditions being previously complied with on the first day of May, A. D. 1889, and has remained in possession since then.

That the rights and interests of the complainant in the said several properties relates back to the date of the said several respective mortgages created as aforesaid, and that your orator has thus become entitled to all of the assets of said company, included in which is the right to recover the amount of $140,812.47, unlawfully collected by the said Barnes, as Comptroller, from the Florida Railway & Navigation Company, and to any and all such sums as at other times may have been in the same way unlawfully collected from the said receiver during the continuation of his management of said property as such.

Your orator avers that it is in no otherwise whatever the successor to the Florida Railway & Navigation Company, and that it holds its property under and by virtue of liens created a long time in the advance of the pretended assessments under Chapter 3558 of the laws of Florida.

Further complaining, your orator says that on the 8th day of June, 1891, without any previous notice whatever to your orator, there was approved by the Governor of the State of Florida an act, being Chapter 4703 laws of Florida, reference to which is here made as a part of this bill.

That pretending to act under the authority of said act, the Comptroller of the State of Florida has directed, and the sheriff of Leon county intends, and has undertaken, to seize and sell the property of your orator for the State and county taxes so illegally assessed for the years 1879, 1880 and 1881, all of which doings are greatly to the wrong and injury of your orator, as tending to injure the credit of its company, and affects prejudicially the values of its property, and will cast a cloud upon the title of your orator thereto. Attached hereto is a copy of the Comptroller's warrant to said sheriff, marked D, and made part of this bill.

That your orator is informed and believes that the said sheriff, unless restrained by the order of the honorable court, will sell the property of your orator, for the purposes as set forth, and it attaches hereto a copy of the published notice given by the sheriff of his intention to sell said property on the 7th day of November, 1892, which is marked exhibit ——, and made a part of this bill.

That all of these wrongs and injuries to your orator in his right and title to his property are against equity and good conscience, and inasmuch as your orator is without relief except in a court of equity where such things are cognizable.

To the end, therefore, that the defendants may, if they can, show cause why your orator should not have the relief hereinafter prayed, and that they, and each of them, may upon their corporal oath full, true, direct.

and perfect answer make to all and singular the premises, and that your honor will, by a decree of this honorable court, decree—

1st. That all of its entire line of road from Jacksonville to Chattahoochee, and the branches to Monticello and St. Marks, and the lines of road from Fernandina to Cedar Keys, and from Waldo to Tampa, are covered by the exemption from taxation, as provided in the Internal Improvement act;

2d. That its line of road from Jacksonville to Lake City is not subject to taxation for State and county purposes for the full period of thirty-five years from the —— day of ———, A. D. 1866, the date of its completion;

3d. That its line of road from Lake City to Quincy, with the branch from Drifton to Monticello, and the road from Tallahassee to St. Marks, are not subject to taxation for State or county purposes for the full period of thirty-five years from the —— day of ———, A. D. 1866, the date of their completion;

4th. That its line of road from Fernandina to Cedar Keys is not subject to taxation for State or county purposes for the full period of thirty-five years from the —— day of ———, A. D. 1864, the date of its completion;

5th. That your orator's line of railroad from Waldo to Ocala is not subject to taxation for State or county purposes for the full period of thirty-five years from the —— day of ———, A. D. 1877, the date of its completion;

6th. That your orator's line of railroad from Ocala to Tampa is not subject to taxation for State or county purposes, and will not be for the full period of thirty-five years from the date of its completion to the waters of Tampa Bay.

7th. That your orator's line of railroad from Quincy to Chattahoochee is not subject to taxation for State or county purposes for the full period of thirty-five years from the —— day of ———, A. D. 1874, the date of its completion;

8th. That your orator's lines of roads, and no part of them, are subject to the payment of the tax assessed against them in A. D. 1885, for the years 1879, 1880 and 1881;

That each and every the assessments made by the said William D. Barnes for State or county purposes, on the lines of road of your orator, for either and each of the years 1879, 1880, 1881, 1882, 1883, 1884, 1885 and 1886, are illegal and void.

May it please your honor to grant unto your orator the injunction of this court, directed to the said William D. Bloxham, as Comptroller, and to John A. Pearce, as sheriff of Leon county, State of Florida, restraining them and each of them from making any levy or sale, or attempting the same, on the property of the lines of your orator's railroad, on account of any of the assessments of taxes for the said years of 1879, 1880, 1881, 1882, 1883, 1884, 1885 or 1886, and from executing or attempting to execute any warrants of sale issued under said assessments, or either of them, and restraining the said William D. Bloxham from hereafter making any further assessments for such purposes, or for any other purposes of taxation upon the lines of your orator's road, which is upon the routes between Jacksonville and Chattahoochee, or the branches therefrom to Monticello or St. Marks, or on the line from Fernandina to Cedar Keys, or from Waldo to the waters of Tampa Bay until the expiration of thirty-five years from the date of the completion of the said several lines.

And that it be decreed that the said William D. Bloxham do pay to your orator all moneys which have been so improperly collected on the account of said assessments for taxes; and for such other and further relief as to equity may appertain.

To this bill of complaint were attached several exhibits. Exhibit A was composed of copies of assessment rolls of various counties upon the different lines of road and property of the complainant, and made for the year 1884. Exhibit B was a warrant from W. D. Barnes, Comptroller, dated April 24th, 1885, addressed to Samuel C. Tucker, sheriff of Alachua county, which was in form as follows:

State of Florida, }
In God we Trust. }

COMPTROLLERS'S OFFICE, }
TALLAHASSEE, FLA., April 24, 1885. }

State of Florida, to Samuel C. Tucker, sheriff of Alachua county.

GREETING—You are hereby commanded to collect from the Florida Railway & Navigation Company, by levy and sale, in the same manner as now provided by law for the sale of property under execution from the Circuit Court, of the shops, fixtures, rolling stock or any part thereof, or of the entire road or roads belonging to or owned by said company, the sum of one hundred and forty thousand and seventy-three dollars and sixty-one cents ($140,073.61), that being the amount of State and county taxes assessed against the Tropical Peninsular, Florida Transit, Florida Transit and Peninsular, Florida Central, Jacksonville, Pensacola & Mobile, Florida Central & Western, and Florida Railway & Navigation Company's railroads, all now owned or operated by the Florida Railway & Navigation Company, for the years 1879, 1880, 1881, 1882, 1883

and 1884, which are now due and unpaid, together with the costs and expenses of sale, and you will make due return hereof to this office.   Witness my hand and seal of office this the 24th day of April, A. D. 1885.

W. D. BARNES,

Comptroller.

Exhibit C was a copy of receipt given by W. D. Barnes, Comptroller, to the Florida Railway & Navigation Company, and was as follows:

State of Florida.

$140,073.61

738.86

$140,812.47

In God we Trust.

COMPTROLLER'S OFFICE, }
TALLAHASSEE, FLA., May 28, 1885. }

Received of the Florida Railway & Navigation Company the sum of one hundred and forty thousand and seventy-three 61-100 dollars, assessed against the several railroads described in the following advertisement of the properties of the same, as the State and county taxes thereon, as therein expressed, and received also the sum of seven hundred and thirty-eight 86-100 dollars, as the costs and expenses of such collection. (This does not include the taxes assessed against the Fernandina and Jacksonville Railroad property for the year A. D. 1883).   Which said payment is made by the said Florida Railway & Navigation Company because of the levy and threatened sale as indicated in said advertisement, and to avoid the sacrifice and injury which will be done to its property by such sale.   And under protest that the amount so levied and assessed is not the proper amount due on said account by the said company, but is in excess thereof, and that this

payment is not voluntary, but is made under duress. And that it reserves to itself the right to recover such excess of payment as shall be found to have been herein made in any manner that it shall be available whereby so to do. This payment is made for the said Florida Railway & Navigation Company by Mr. J. Aug. Johnson, attorney.            W. D. BARNES,

(L. S.)                              Comptroller.

Exhibit D was a copy of a warrant from W. D. Bloxham, Comptroller, to John A. Pearce, sheriff of Leon county, and the return thereon, and is as follows:

COMPTROLLER'S OFFICE, STATE OF FLORIDA.

To John A. Pearce, sheriff of Leon county, State of Florida:

GREETING—You are hereby commanded to collect from the Florida Central & Peninsular Railroad Company, formerly known as the Florida Railway & Navigation Company, embracing the lines or divisions thereof formerly known as the Jacksonville, Pensacola & Mobile Railroad, the Florida Central & Western Railroad, the Florida Central Railroad, and the Atlantic, Gulf & West India Transit Railroad, by levy and sale, in the same manner as now provided by law for the sale of property under execution from the Circuit Court, of the shop, fixtures, rolling stock, or any part thereof, or of the entire road, or such part thereof as may be located in this State, belonging to or operated by said company, the sum of ninety-six thousand, one hundred and eighty-one dollars and sixty-nine cents ($96,181.69), that being the amount of State and county taxes assessed against the Florida Railway & Navigation Company, embracing the lines or divisions thereof formerly known as the Jacksonville, Pensacola

& Mobile Railroad, the Florida Central & Western Railroad, the Florida Central Railroad, and the Atlantic, Gulf & West India Transit Railroad, now constituting the Florida Central & Peninsular Railroad, under the provisions of Chapter 3558 laws of Florida, for the years eighteen hundred and seventy-nine (1879), eighteen hundred and eighty (1880), and eighteen hundred and eighty-one (1881), which said amount is now due and unpaid, together with the costs and expenses of sale as provided by law, and you will make due return thereof to this office. Witness my hand and seal of office this the fifth (5th) day of October, A. D. 1892.

W. D. BLOXHAM,

[Seal.]                                    Comptroller.

Came to hand this 5th day of October, 1892, and executed the within by levying on the following property of the Florida Central & Peninsular Railroad Company, formerly known as the Florida Railway & Navigation Company, embracing the lines or divisions thereof formerly known as the Jacksonville, Pensacola & Mobile Railroad, the Florida Central & Western Railroad, the Florida Central Railroad, and the Atlantic, Gulf & West India Transit Railroad, the road and road-bed and appurtenances thereto belonging, together with the right-of-way extending from Jacksonville to Chattahoochee, from Fernandina to Tampa, and from Waldo to Cedar Keys, this the 5th day of October, A. D. 1892.

JOHN A. PEARCE,

Sheriff Leon county.

There was also attached to the bill of complaint as an exhibit thereto a copy of the published notice of the sheriff's sale by the defendant John A. Pearce, which advertisement was in form as follows: Under

42

558 SUPREME COURT.

Bloxham, Comp., et al. v. F. C. & P. R. R. Co.—Statement of Case.

and by virtue of a warrant issued by Hon. W. D. Bloxham, Comptroller of the State of Florida, bearing date of October 5th, 1892, to me directed as sheriff of Leon county, against the Florida Central & Peninsular Railroad Company, formerly known as the Florida Railway & Navigation Company, embracing the lines or divisions thereof formerly known as the Jacksonville, Pensacola & Mobile Railroad, the Florida Central & Western Railroad, the Florida Central Railroad, and the Atlantic, Gulf & West India Transit Railroad, for State and county taxes due and unpaid for the years 1879, 1880 and 1881, for ninety-six thousand one hundred and eighty-one dollars and sixty-nine cents ($96,181.69), together with the costs and expense, commanding me to collect by levy and sale in the same manner as now provided by law for the sale of property under executions from the Circuit Court, of the shop, fixtures, rolling stock, or any part thereof, or of the entire road, or such part thereof as may be located in this State, belonging to or operated by said company, I have this day levied upon and will expose for sale to satisfy said warrant, in front of the court house door, in the city of Tallahassee, during legal hours of sale, on the first Monday of November, being the 7th day of said month, being legal sales' day, the following property of the Florida Central & Peninsular Railroad Company, formerally known as the Florida Railway & Navigation Company, embracing the lines or divisions thereof formerly known as the Jacksonville, Pensacola & Mobile Railroad, the Florida Central & Western Railroad, the Florida Central Railroad, and the Atlantic, Gulf & West India Transit Railroad, to-wit: The road and road-bed, and appurtenances thereto belonging, together with the right-of-way, extending from Jacksonville to Chattahoochee, from Fer-

nandina to Tampa, and from Waldo to Cedar Keys, levied upon as the property of the Florida Central & Peninsular Railroad Company, embracing the lines or divisions thereof formerly known as the Florida Railway & Navigation Company, embracing the lines or divisions thereof formerly known as the Jacksonville, Pensacola & Mobile Railroad, and the Florida Central & Western Railroad, the Florida Central Railroad, and the Atlantic, Gulf & West India Transit Railroad. This 5th day of October, A. D. 1892.

JOHN A. PEARCE,
Sheriff Leon county.

The bill of complaint also had attached to it a copy of the report of the Comptroller of the State of Florida for the year 1885. In this report were especially marked these portions which stated the amount of State and county taxes received in various counties of the State from the Florida Railway & Navigation Company for the taxes of 1879, 1880, 1881, 1882, 1883 and 1884, or for some of those years. Specially marked also in said report was a statement showing the amount of taxes assessed under Chapter 3558 laws of Florida, upon railroad and property thereto belonging, in certain counties named, which were omitted from the assessment rolls of 1879, 1880 and 1881. These taxes are the same, the collection of which is sought to be enjoined by the bill of complaint.

After some amendments had been allowed to the bill of complaint (the bill as amended being hereinbefore set forth), the defendants on January 2d, 1893, filed their joint answer to the bill of complaint. This answer, omitting the usual title and caption, and the conclusion, was as follows: The defendants now, and at all times hereafter, saving and reserving to themselves and to the State of Florida, for which they are acting

in the matter of the said bill complained of, all and all manner of benefit, advantage of exception and otherwise that can or may be had or taken to the many errors, uncertainties and imperfections in the said bill contained, and especially all advantage of exception to this honorable court's jurisdiction and power to grant the relief prayed as to the collection of $140,812.47 from complainant by William D. Barnes, Comptroller of the State of Florida, in the year A. D. 1885, as taxes due by the Florida Railway & Navigation Company, to the State of Florida for the years of 1881-2-3 and 4, for answer thereto, or so much thereof as these defendants are advised it is material or necessary for them to make answer to, answering say:

These defendants admit that complainant is a corporation duly organized under the laws of Florida, but have not sufficient information to say whether the railroads named in complainant's bill, A, B, C, D, E. F, G, J, K, M, were or are constructed as required by their charters and the said Internal Improvement act of Florida, and the amendments thereto, and demand strict proof of the same.

Defendants further answering, deny that the State of Florida did not reserve any right to alter or amend or repeal said acts, and defendants deny that there was no law or act inconsistent with the provisions of the Internal Improvement act and said acts of incorporation with regard to the tax on railroad property and the exemption thereon, and defendants deny that it was the intent of the Legislature or of the people of the State of Florida at that time and since to continue in full force or at all the exemption contained in said Internal Improvement act and acts of incorporation during the term prescribed in said acts.

That the act, Chapter 3558, laws of Florida, was not required to specify, as liable to taxation, the property of the Florida Railway & Navigation Company and its constituents, other than in the manner specified in said act, and these defendants deny that the property of the Florida Railway & Navigation Company and its constituents were in fact exempt from taxation at the time of the passage of said act, and defendants allege and aver that the State officers were authorized to levy upon said property for such taxes.

Answering further, defendants deny that the State Constitution of 1868 was inconsistent with the Constitution of the United States, and deny that said State Constitution abrogated any contract in force between the State and the said railroad companies, as set forth in said bill of complaint.

Defendants deny that the grant of exemption from taxation given said line of road as stated in complainant's bill, in aid of construction, were given by the Internal Improvement act without reference or limitation as to the proprietorships therein, or to any changes in such ownership; and these defendants, further answering, say that as to so much of complainant's bill as claims that by the acts of the Legislature of Florida the property of the complainant and its constituent parts, the Florida, Atlantic & Gulf Central Railroad Company, the Pensacola & Georgia Railroad Company, the Florida Railroad Company, the Tallahassee Railroad Company, and the other roads mentioned in complainant's bill, and designated as D, F, G, H, J, K, L, M, were exempt from taxation for thirty-five years, and that by reason of the Florida Central & Peninsular Railroad Company purchasing and acquiring the same in the manner and by modes of conveyance, as at foreclosure sale and otherwise, as set forth

in complainant's bill, that the complainant is exempt in the property as aforesaid from the payment of the taxes demanded by the State of Florida, and by these defendants sought to be collected by the levy and proposed sale complained of, these defendants claim all the benefit they could have from a demurrer interposed thereto.

And defendants say that they are advised that if, as claimed by complainant, the Legislature of Florida did intend to exempt the property of complainant's line of road built on the lines indicated in the 4th section of the Internal Improvement act, and of the Florida, Atlantic & Gulf Central Railroad Company, the Pensacola & Georgia Railroad Company, the Florida Railroad Company, the Tallahassee Railroad Company, and embraced in the roads of the Florida Central & Peninsular Railroad Company, from taxation for the term of thirty-five years, the said Legislature transcended its constitutional powers, and the said acts can not be construed or held as exempting the property of the Florida, Atlantic & Gulf Central Railroad, the Pensacola & Georgia Railroad Company, the Tallahassee Railroad Company, and the Florida Railroad Company, for defendants allege that said exemption was not extended to all railroad companies and their property, in the State of Florida.

That defendants are advised and charge that the alleged grant of exemption, if made, was made gratuitously and without consideration, and if there was any consideration, it was not such consideration as to preclude the people of Florida and their Legislature, by their subsequent organic law and legislation, from subjecting even the Florida, Atlantic & Gulf Central Railroad Company, the Pensacola & Georgia Railroad Company, the Tallahassee Railroad Company, and the

Florida Railroad Company to the same burdens as are imposed upon other corporations or natural persons who enjoy the benefits of State and county governments. That even if the said acts cited by complainant's bill did intend and did constitutionally exempt the property of the Florida, Atlantic & Gulf, the Pensacola & Georgia, the Tallahassee, and the Florida Railroad companies, organized prior to the Constitution of 1868, and acquired by the Florida Central & Peninsular Railroad Company, from taxation, as claimed in its bill, these defendants say they are advised that such exemption did not pass by the several mesne conveyances to the complainant, for these defendants aver that by said acts there was only exempted the capital stock, railroad and other property of the Florida, Atlantic & Gulf Central, the Pensacola & Georgia, the Tallahassee, and the Florida Railroad companies, and defendants aver that with the exception of a part of the right-of-way, and probably a portion of the roadbed, and perhaps a few other insignificant items, that the railroad and property upon which the taxes are now sought to be collected, are not the same property which was the property of the said Florida, Atlantic & Gulf Central Railroad Company, the Pensacola & Georgia Railroad Company, the Tallahassee Railroad Company, and Florida Railroad Company, to which complainant's bill claims exemption attached, and these defendants aver that complainant has not proffered or tendered the tax upon any part of the taxed property.

Defendants further answering, say that by the alleged transfers, consolidations and purchase of the various railroads as set forth in said bill of complaint, the complainant did not become entitled to all the rights, property, privileges, franchises and immunities and

alleged exemptions from taxation of the said railroads so claimed to be exempt from taxation, as set forth in complainant's bill. But, on the contrary, these defendants are advised and charge that under the laws of Florida the complainant acquired nothing more than the property purchased by it from the chartered railroads named in complainant's bill, and acquired none of the said railroads' franchises, privileges or immunities and alleged exemptions from taxation as a railroad company duly chartered, empowered to exercise the franchises and enjoy the privileges and immunities thereof in the State of Florida.

Defendants further answering, say that as to the allegations that the lines of railroad designated as "A," "B," "C," "E," were built, accepted the provisions of the said act according to the provisions of the said act, and were accepted by the trustees of said Internal Improvement Fund as completed; and as to the allegations that for nonperformance with the requirements of the Internal Improvement act, in the payment of semi-annual interest, the roads mentioned as "A," "B," "E," were bought and afterwards owned and operated, the defendants have not sufficient information to either admit or deny the same, and demand strict proof thereof, and especially that said railroads were or are constructed as required by said acts and amendments thereto; and as to the allegations that the Jacksonville, Pensacola & Mobile Railroad Company built the line of road designated as "D," and that the president and directors of the Florida Railroad Company set off the construction of the road between Waldo and Ocala as alleged, and that the Florida Railroad Company set off to be constructed the road between Ocala and Tampa Bay, defendants have no knowledge and demand strict proof.

Defendants further answering, deny that the Florida Central & Western Railroad Company was by sale of complainant's line between Jacksonville and Chattahoochee, and branches to Monticello and St. Marks, to Edward J. Reed, and by deed of said Reed, 28th day of February, 1882, invested with all the rights, privileges and immunities covered by said mortgage and of the charters and statutory benefits of the several constituent companies.

These defendants further answering, say that they deny that by reason of the several consolidations of roads mentioned, into the Florida Central & Western Railroad Comyany, the Florida Transit & Peninsular Company, and the Florida Railway & Navigation Company, there was anything in, or any existing laws of such property acquired by which they, or the complainant herein, can claim or receive any immunity or exemption from taxation, or the taxes demanded now from them by the State of Florida herein.

And the defendants further answering, deny that the effect of the legislation in said bill set forth was an exemption of all complainant's lines of roads which were built on the lines indicated in the fourth section of the Internal Improvement act from taxation as claimed. That the exemption as aforesaid was such an immunity as the Legislature was not empowered by the Constitution of Florida to give and grant, and was and is unconstitutional, null and void, and was not, and is not such an immunity as could or does pass to the complainant through the several conveyances and purchases as set forth in the bill.

Defendants further answering, deny that the exemption of the said lines of railroad set forth in said bill from taxation for the periods of time alleged became by contract of the State a part and parcel of the prop-

666          SUPREME COURT.

Bloxham, Comp., et al. v. F. C. & P. R. R. Co.—Statement of Case.

erty value of said roads, and that this exemption became a part of the value of the property of the railroad which complainant acquired in its acquisition of each and all of its said lines, and deny that this was the law of the property as declared by the courts of this State, when the Florida Railway & Navigation Company acquired the same; and that as to so much of complainant's bill as sets forth the claim that complainant is exempt from the payment of the taxes demanded by the State of Florida, and by these defendants sought to be collected by the levy and proposed sale complained of, these defendants claim all the benefits they could have from a demurrer interposed thereto.

Defendants answering further, say they deny the charge contained in that paragraph of complainant's bill alleging that neither the Internal Improvement act, nor acts amendatory thereof, wherein was granted the alleged exemption, nor the acts under which said lines of road were constructed, contained any reservation of power in the Legislature to alter, amend or repeal the said immunity of exemption from taxation, and that any and every act of the State of Florida attempting to revoke, repeal or annul the same was violative of complainant's rights as guaranteed by the Constitution of the United States.

Defendants further answering, say that they deny that the act under which W. D. Barnes, Comptroller, claimed to assess back taxes for the years 1879, 1880 and 1881, was not a law of the State of Florida, but aver that it was a law of Florida, and that said act does sufficiently designate and specify the Florida Railway & Navigation Company, because said company embraced such railroad property as designated by said act to have escaped the payment of taxes for the years mentioned, and defendants deny that said

JANUARY TERM, 1895.        667

Bloxham, Comp., et al. v. F. C. & P. R. R. Co.—Statement of Case.

act of assessment was in violation of complainant's alleged exemption, and the said act is null and void.

Defendants deny that the assessment made by Wm. D. Barnes, Comptroller, as shown by exhibit "A," was null and void, and to that part of complainant's bill which asks relief as to the $140,812.47 paid to the Comptroller as alleged, these defendants are advised, and so say, that complainants can not seek a remedy against that payment, if entitled to such, which is hereby denied, in this proceeding, but that if complainant was injured and oppressed by compulsion in such payment, the relief must be granted by the Legislature of Florida, and defendants deny the jurisdiction and power of this honorable court to grant the relief prayed as to such past payment of taxes.

Defendants answering further, admit that William D. Barnes made assessment on the lines of the Florida Railway & Navigation Company, under Chapter 3558 laws of Florida, but defendants deny that said act is illegal or unjust, or that it is unconstitutional and in violation of any contracts and rights of the Florida Railway & Navigation Company, its stockholders and bondholders, and that said act is legal, just and constitutional.

These defendants being so advised, deny that the law in force at the time of such assessment prohibited the Comptroller and other officials from assessing the property of the Florida Railway & Navigation Company in the manner stated.

These defendants answering further, deny that a lien was not contemplated in favor of the State of Florida, against the Florida Railway & Navigation Company at the time it acquired its line of road, and they are advised and so allege that the State of Florida by a joint resolution of its Legislature, on the —— day of

——————, 1881, directed the Comptroller and Governor to employ counsel to bring suits to collect taxes due, but never up to that time paid by certain lines of railroad in this State, the lines of road of the Florida Railway & Navigation Company being among that number, and the intention of the State of Florida to collect such taxes was made manifest thereby.

To those portions of complainant's bill claiming there was no lien on the lines of road acquired by the Florida Railway and Navigation Company at such time of acquirement, and that Chap. 3558 laws of Florida was unconstitutional and void in that it did not provide for a uniform and equal rate of taxation, and did not secure a just valuation and assessment for all classes of property, and that the State's power of taxation was exhausted over the property when the assessment was made, as shown by exhibit "C," and those portions of complainant's bill denying the right of the State to levy a tax or additional tax on the values of said property of the Florida Railway & Navigation Company, as set forth in complainant's bill, and to those portions of said bill relating to the issue of $10,000,000 of bonds, and the disposition of $5,000,000 thereof, and the foreclosure and sale of the properties of the Florida Railway & Navigation Company and the purchase of the same by W. B. Cutting, agent, as showing any reason why the taxes sought to be collected by the levy and proposed sale herein, are not due to the State of Florida, these defendants claim all the benefit they could have from a demurrer interposed thereto.

Defendants being so advised, deny that complainant in this proceeding has any right to recover the $140,812.47 alleged to have been unlawfully collected by said

Barnes, Comptroller, and deny that the same were un-justly or unlawfully collected.

Defendants admit that Chapter 4703 laws of Florida was passed and approved as alleged.

Defendants further answering, admit that under the authority of above act and the acts to which it relates, they have seized and levied upon the property of com-plainant, as shown by the Comptroller's warrant an-nexed to the bill of complaint, to pay the taxes due on the same for the years 1879, 1880 and 1881, and legally assessed upon the same for said years.   And that they will sell the said property of complainant for the pur-pose of paying such due and unpaid taxes for said years, as shown by the published notice annexed to complainant's bill, unless the taxes so assessed against the property of complainant for the said years 1879, 1880, 1881 be paid, together with the costs and expen-ses, before such sale.

The complainant excepted to certain portions of the defendants' answer.   Not being necessary to an un-derstanding of the case, those exceptions need not be set out in detail.   Some of these exceptions were al-lowed and some refused.   After the ruling upon the exceptions, the defendants filed a further answer. This answer, after stating the name and title of the case was as follows:    .

In compliance with the order of the court made herein on the 12th day of July, A. D. 1895, sustaining complainant's exceptions to defendants' answer, for further answer, these defendants, William D. Blox-ham, as Comptroller of Florida, and John A. Pearce, as sheriff of Leon county, say:   That upon informa-tion and belief they admit as true the allegations in the plaintiff's bill, that the lines of railroad designated as "A," "B," "C," "E," "F," and "G" were con-

structed as alleged in said bill, and that they accepted the provisions of the Internal Improvement act, and were accepted by the Trustees of the Internal Improvement Fund as completed; and that the lines of railroad designated as "A," "B," "C," and "E" were sold by the Trustees of the Internal Improvement Fund for non-compliance with the provisions of the Internal Improvement act, for non payment of semi-annual interest as alleged in plaintiff's bill, and were purchased by the purchasers named therein, and that the complainant, by the mesne conveyance as alleged in said bill, afterwards became the owner of the said railroads, but defendants deny that the said purchasers of said railroads, or their successors, or the plaintiff, thereby acquired any immunities whatever from taxation on said railroads and properties connected therewith. Defendants also admit, upon information and belief, that the Jacksonville, Pensacola & Mobile Railroad Company constructed the line of railroad from Quincy to Chattahoochee, as alleged in the said bill. They also admit that the complainant is a corporation, organized under the laws of the State of Florida on the 17th day of November, A. D. 1888, and acquired the lines of railroad as alleged in said bill; but they deny that they thereby acquired any immunity from taxation upon said railroads, or upon any part thereof.

The complainant filed a replication to this answer; but after replication was filed, the solicitors for the respective parties agreed to submit the same upon bill and answer upon an application of the complainant for an injunction to restrain the defendants from proceeding to sell the property advertised for the taxes for the years 1879, 1880 and 1881. The cause having been submitted, but before a determination of the same, the

parties by their solicitors entered into the following agreement:

In the Circuit Court of the Third Judicial Circuit of Florida, in and for Suwannee county.

The Florida Central & Peninsular Railroad Company *versus* William D. Bloxham, as Comptroller, and John A. Pearce, Sheriff of Leon County.

This cause having been this day heard on application for an injunction *pendente lite* to restrain the enforcement, by sale, of the warrant of the Comptroller aforesaid of the property of the defendant (complainant) for certain taxes assessed in A. D. 1885, on certain of its property, then as the property of the Florida Railway & Navigation Company, for the years A. D. 1879, 1880 and 1881; and the same having been argued as upon its merits: It is stipulated by the counsel for the respective parties that if the said decision shall be for a refusal of the injunction, that thereon a decree may be entered dismissing complainant's bill of complaint, but that the said order or decree shall have the same force and effect as if there had been a temporary injunction which was dissolved by the action of the court. There having been by mutual consent proceedings in accordance with such practice as would have followed an injunction, exception to the absence of a formal writ of injunction is waived in both this court and the Supreme Courts, either of Florida or of the United States. This without prejudice as to the exercise of the full discretion of the court, and a final decree upon the merits may also be entered herein in accordance with its findings.

JOHN A. HENDERSON,
Solicitor for Complainant.
W. B. LAMAR,
Attorney-General, and Solicitor for Defendants.
November 13th, 1893.

672 SUPREME COURT.

Bloxham, Comp., et al. v. F. C. & P. R. R. Co.—Statement of Case.

The cause having been submitted for final decree, the court below on the 25th day of November, 1893, made a final order and decree, which, after the usual preliminaries, is as follows:

1st. That the several lines of railroad now owned by complainant and described in said bill of complaint, to-wit: The line of railroad from Lake City to Quincy, Florida, with branches to Monticello and St. Marks, Florida; the line of railroad from Lake City to Jacksonville, Florida; the line of railroad from Fernandina to Cedar Keys, Florida; the line of railroad from Waldo to Ocala, Florida, and the line of railroad from Ocala to Tampa Bay, Florida, are, and were in A. D. 1885, each and all, subject to taxation as other property in the State of Florida; even though said lines of railroad were built on the lines indicated by the general Internal Improvement act of A. D. 1855, Chapter 610 laws of Florida, and under the provisions contained in said general Internal Improvement act, and at the time or times severally alleged in complainant's bill.

2d. That the several lines of railroad aforesaid, with the branch as aforesaid, were not exempt from taxation for the years A. D. 1884, 1883 and 1882, and that the taxes thereon, demanded of the Florida Railway & Navigation Company thereon, under an assessment made in 1885, and paid under protest as alleged by complainant, were lawfully exacted from and collected from said company, notwithstanding portions of some of the aforesaid lines of railroad, or all of the same, were constructed under the provisions of the general Internal Improvement act of the State of Florida, Chapter 610 laws of Florida, and notwithstanding said lines of railroad were built on the lines indicated thereby and therein.

JANUARY TERM, 1895.        673

Bloxham, Comp., et al. v. F. C. & P. R. R. Co.—Statement of Case.

3d. That the said lines of railroad properties of complainant are subject to taxation for the year A. D. 1886, and that complainant's prayer that defendants be enjoined from assessing and collecting the same for the year A. D. 1886 be and the same is hereby denied.

4th. That the taxes now attempted to be collected on the said several lines of railroad owned by the complainant by the defendant William D. Bloxham, as Comptroller, and John A. Pearce, as sheriff of Leon county, under assessments made thereon in A. D. 1885, by virtue of a statute passed A. D. 1885, Chapter 3558 laws of Florida, on the aforesaid lines of railroad and branches, now the property of the complainant, but which were so assessed on the same for the years A. D. 1879, 1880 and 1881, and which were assessed then as the property respectively of the Jacksonville, Pensacola & Mobile Railroad, the Florida Central (and) Railroad, and the Transit Peninsular Railroad companies were and are not liens on said several lines of railroad for the several years aforesaid for which said assessments were made, and were not and are not assessable against the Florida Railway & Navigation Company. That the said statute under which the assessments were made for the years last aforesaid was a special statute for the collection of general revenue, and did not provide or attempt to provide a uniform, equal and just assessment or collection of taxes for the years A. D. 1879, 1880 and 1881, and that so much and that such part of said statute of A. D. 1885, Chapter 3558 laws of Florida, as attempts to provide for an assessment and collection of taxes for the years A. D. 1879, 1880 and 1881 is, as to complainant's said property, unconstitutional and void, and the State of Florida by its Legislature having repeatedly and expressly

43

limited its right to assess property omitted from assessment for taxes for more than three years next preceding the assessment thereof, the said assessment so made as aforesaid, or attempted to be made, on the said properties of the complainant for the years A. D. 1879, 1880 and 1881, under the provisions of the act aforesaid and the said warrant and tax levy is hereby adjudged and decreed to be unequal, unlawful, unconstitutional and void.

5th. And that the said defendants, the said William D. Bloxham, as Comptroller of the State of Florida, and John A. Pearce, as sheriff of Leon county, Florida, their agents and servants, and each and every of them, be and they are hereby perpetually enjoined from selling or attempting to sell the said several lines of railroad of complainant, or any parts thereof, under said assessment for the years A. D. 1879, 1880 and 1881, and from in any way or manner interfering with or attempting to collect the said taxes for said years last aforesaid.

6th. That defendants pay the costs of this cause, to be taxed by the clerk of the Circuit Court of Leon county, Florida.

Ordered, adjudged and decreed at Chambers, at Live Oak, in the Third Judicial Circuit of Florida, this the 25th day of November, A. D. 1893.

J. F. WHITE,
Judge of the Third Judicial Circuit.

From this decree the defendants appeal. All orders in the case below were made by Hon. John F. White, Judge of the Third Judicial Circuit of Florida, upon a certificate of the Hon. John W. Malone, Judge of the Second Judicial Circuit, that he was disqualified in the case by reason of being interested in the result of the same.

The other facts in the case are stated in the opinion of the court.

*The Attorney-General,* for Appellants.

Three questions are raised in the petition of appeal, viz: 1st, whether complainant's railroads were exempted from taxation for the years 1879, 1880 and 1881, under the Internal Improvement act of Florida, Chapter 610. 2d, whether Chapter 3558 laws of Florida is unconstitutional and void. 3d, whether Chapter 4073 laws of Florida is unconstitutional and void.

The nonexemption of the such railroad from taxation for the years 1879, 1880 and 1881, under the Internal Improvement act of Florida, is, we think, res adjudicata, and for that reason will not discuss the first question., L. & N. R. R. Co. vs. Palmes, 109 U. S. 244, but will proceed to discuss the other two in their order.

We will first inquire whether Chapter 3558 is a special law for the assessment of taxes for State and county purposes and in conflict with section 17, article 4, of the Constitution of 1868. Under the provisions of this statute it is made the duty of the Comptroller in all cases in which any railroad or other properties thereto belonging or appertaining in this State in the tax years commencing on March 1st, 1879, 1880 and 1881, or any of such years, were not assessed for taxes for such years, to cause the same or so much thereof as were not assessed to be assessed for State and county purposes at the same amount as they would have been had they been assessed in such years or any of them as to which there was a failure to assess.

This statute is limited in its operation to one class of property, viz: railroads and other properties belong-

ing thereto or appertaining, but operates alike on all property of this class.

The objects of taxation consists of such a variety of property as necessitates a classification of them for the purpose of taxation.

No general statute can be devised for the assessment and collection of taxes for State and county purposes that operates uniformly and justly upon every variety of property without a proper classification of the objects of taxation; hence it is a common practice for legislatures to enact laws for the assessment and collection of taxes for State and county purposes upon real estate by one mode of procedure and upon personal property by another mode of procedure and upon railroads by another mode of procedure, and upon telegraphs by another mode of procedure, and so on ad infinitum. And our own legislature has pursued this practice in this State.

Now a revenue law which provides for the assessment and collection of taxes for State and county purposes upon real estate alone and operates alike upon all real estate is not a special law because it does not operate upon personal property also; nor is a statute which provides for the assessment and collection of taxes for State and county purposes upon personal property alone, and operates alike upon all personal property a special law because it does not operate upon real estate also; nor is a statute which provides for the assessment and collection of taxes for State and county purposes upon railroads alone, and operates alike upon all railroads, a special tax because it does not operate upon real estate also; hence the statute under consideration is not a special law and in conflict with section 17, article 4, of the Constitution of 1868,.

because it does not operate upon real estate and all other classes of property.

The term "general" is used in contradistinction to "special" in the section and article of the Constitution above referred to, and when so used means relating to all of a class, instead of to one or a part of that class. A statute, therefore, which relates to operate upon all of a class of things is a general law in contradistinction to a special law which relates to and operates upon one or a part of that class. Now the statute under discussion operates alike upon all of a class of objects of taxation and not upon one or a part of that class only; hence it is a general law and not a special one. 23 vol. Am. & Eng. Ency. of Law, 148 and notes.

It is provided in section 25, Chapter 4115 laws of Florida, that if any assessor when making his assessments shall discover that any land in his county was omitted in the assessment roll of either or all of the three previous years, or that any land was illegally sold for taxes and was then liable to taxation, he shall in addition to the assessment of such lands for that year assess the same separately for such year or years that it may have been so omitted or was illegally sold, at the cash value thereof in such year, noting distinctly the year in which such omission occurred, and such assessment shall have the same force and effect as it would have had if made in the year the same was omitted, and taxes shall be levied and collected thereon in like manner and together with the taxes of the year in which the assessment is made, but no land shall be assessed for more than three years arrears of taxes and all lands shall be subject to such taxes omitted to be assessed into whosoever hands they may come. It is apparent to the most casual observer that this section of the act is limited in its operation to lands and can

not be extended to railroads, telegraph lines or personal property. It is, however, a general law, because it relates to all of a class of objects of taxation. But if it had been limited in its operation to a portion of the lands of the State instead of all of them it would have been a special law, and for that reason unconstitutional.

There is no law in this State which authorizes back taxes to be assessed upon personal property, railroads. or telegraph lines for the years that such property may have been omitted from the assessment rolls of the several counties and thus escaped taxation, except Chapter 3558, yet the section of the act above referred to is not a special law and unconstitutional because it does not relate to and operate upon all other objects of taxation. State vs. Donaldson, 41 Minn. 74; McAurick vs. The Miss. & Mo. R. R. Co., 20 Iowa, 342; State vs. Liverpool, L. & G. Ins. Co., 40 La. Ann. 463; DeMorville and Co. vs. Davidson County, 87 Tenn. 214; L. R. & H. Ry. Co. vs. Hanniford, 49 Ark. 291; Dow vs. Beidleman, 49 Ark. 325; Stat. Long Branch Police, &c. vs. John Sloane et al., 49 N. J. Law, 356 and 362-3; Freeholders of Hudson vs. Buck, 51 N. J. Law, 155; State Trenton Iron Co. vs. Yard, 42 N. J. L. 357; Coal Run Coal Co. vs. Finlen, 124 Ill. 670; The Iowa Land Co. vs. Soper, 39 Iowa, 115 and 116; Chicago, &c. R. R. Co. vs. Iowa, 94 U. S. 163; Humes vs. Mo. Pacific Ry. Co., 82 Mo. 221; David vs. State, 3 Lea (Tenn.) 379 Cooley Const. Lim. 5th ed., 481; Cooley Taxation, 5th ed., 481; Columbus L. R. R. Co. vs. Wright, 89 Ga. 575-87.

We will inquire whether Chapter 3558 is in conflict with section 1, Article 12 of the Constitution of 1868.

This section of the Constitution requires the Legislature to provide for a uniform and equal rate of taxa-

tion and prescribe such regulations as shall secure a just valuation of all property both real and personal.

The word "rate" as used here evidently means percentage, and not the valuation of property. And the requirements of this section of the Constitution are complied with when the Legislature provides for a uniform percentage of taxation and prescribes such regulations as will secure a just valuation of all property.

In order therefore to determine whether this statute complies with this section of the Constitution it will only be necessary to ascertain two things, viz: first, whether the precentage of taxation therein provided for is uniform and equal, and second, whether the regulations therein prescribed for securing the valuation of the property, are such as will secure a just valuation thereof.

Upon applying these tests to the statute under discussion, it will be observed that the rate of percentage of taxation therein provided for by law on all taxable property in the State of Florida for the years 1879, 1880 and 1881, and is uniform and equal; and that regulations therein prescribed to secure a valuation of the property are such as will secure a just valuation thereof. There is no statute in this State that we can discover that conflicts with the section of the Constitution above referred to.

We think that the Legislature had the power to enact this statute and that both justice and good policy required the enactment of it. It can not be doubted or even questioned but both the letter and spirit of our Constitution requires that all classes of taxable property in this State shall bear their proportional share of the burdens of taxation, and where any class of taxable property has been omitted from the assessment

rolls of previous years through the negligence or inadvertence of State or county officers or otherwise, and thereby escaped taxation for those years to which they were subject, the Legislature has the power to enact a law and therein provide for the assessment and collection of taxes thereon for State and county purposes for the years that they escaped taxation. Tallman vs. City of Janesville, et al., 17 Wis. 73; Sturges vs. Carter, &c., 114 U. S. Sup. Ct. 511; North Car. R. R. Co. vs. Com. of Alamance, Co., 82 North Car. 259; Locke vs. New Orleans, 4 Wallace (U. S.) 172; City of Lafayette & Co., Treasurer vs. Jenners, 10 Indiana page 81 and notes; Stockdale vs. Insurance Co., 20 Wallace (U. S.) 332; Cooley on Taxation (2d edition) 291-219-244-246; Burroughs on Taxation, sec. 493, top page 617; Hannibal et al., R. R. Co. vs. City of Kansas, 22 Amer. & Eng. R. R. Cases, 239; State vs. Memphis and Charleston R. R. Co., 22 vol. Amer. & Eng. R. R. Cases, 201; Perry County vs. Selma &c. R. R. Co., 7 Amer. & Eng. R. R. Cases, 298; Wade on Retrospective Law, section 253; Cross vs. City of Milwaukee, 19 Wisconsin, 535.

And the power of the Legislature to enact such a law is not affected by lapse of time. North Car. R. R. Co., vs. Alamance Co., 82 North Car. Reports 259.

Property subject to, but which has escaped taxation, is in the hands of a subsequent purchaser subject to taxation for the years which it escaped through the negligence or in-advertence of any of the officers who had duties to perform with regard to assessing, levying or collecting such taxes. Fairfield vs. The People, 94 Illinois, 244; Tallman vs. Janesville, 17 Wisconsin, 71; Cross vs. Milwaukee, 19 Wisconsin, 509; Cooley on Taxation; page 311 (2nd edition); Hannibal, etc. R. R. Co. vs. City of Kansas, 22 Amer. & Eng. R. R. Cases, 242; The

State vs. St. Louis, etc. Ry. Co. 77 Mo. 202, is an authority apparently adverse to the doctrine above stated, but upon an examination of this case, it will be observed that the statute under consideration was decided by a divided court to be retrospective and void as to the purchases of the property tax thereunder.

There is a provision in the Constitution of the State of Missouri inhibiting the Legislature of that State from passing retrospective laws and that decision was controlled by that; hence this decision is not authority in States whose constitutions contain no provision inhibiting the Legislature of such States from passing retrospective laws.

In the acts for the assessment and collection of taxes for State and county purposes which were in force during the years 1879, 1880 and 1881, are sections which empower the assessors of taxes in certain counties to assess property which had escaped assessment for previous years, but these sections gave no authority to such officers in the case under discussion, because the assessors had no authority to assess railroads on their rolling stock; the Comptroller was the assessor of this class of property, and the omission of the assessors to assess railroads or their rolling stock under these sections of the revenue acts can not affect the questions involved in this suit.   Perry Co. vs. Selma, etc. R. R. Co., 58 Ala. 546.

Chapter 4073 laws of Florida simply provides for the enforcement of the State and county taxes which were assessed under Chapter 3558 but never collected.   This is a remedial statute which simply provides for the enforcement of a pre-existing right.   It does not undertake to create new rights or divest vested rights but simply provides a remedy to enforce a right, and it is clearly within the power of the Legislature to pass a

statute of this character. The authorities cited supra to sustain the validity of Chapter 3558 laws of Florida apply to this statute also.

Partial inequality in a tax law will not vitiate it, nor even where injustice is inflicted at times in its workings. People vs. Home Ins. Co., 3 Amer. & Eng. Corporation Cases, page 376, beginning at top of page; Blackwell on Tax Titles, sec. 30 and sec. 31, page 36 (bottom).

Every intendment is in favor of the validity of a statute. An attack made upon it to overthrow it must point out plainly its unconstitutionality. Eng. & Amer. Ency. of Law, page (bottom) 673, being section three (3) under "Constitutional Law." See also same title same volume section 6, page (bottom) 689. This is the settled rule of construction in this State.

### BRIEF OF APPELLEE.

*John A. Henderson*, for Appellee.

The Constitution of Florida recognized certain lines of railroad proper to be aided as public works by the Legislature of the State. Constitution of 1845; McClellan's Digest, p. 589.

A line of railroad from the St. Johns river at Jacksonville and the waters of Pensacola Bay, with an extension, * * * and a line from Amelia Island on the Atlantic to the waters of Tampa Bay, in South Florida, with an extension to Cedar Key, in East Florida, * * are proper improvements to be aided from the Internal Improvement Fund. McClellan's Digest, p. 590, sec. 4.

"The several railroads now organized or chartered by the Legislature, or that may hereafter may be chartered, any portion of whose routes, as authorized by their

different charters and amendments thereto, shall be
within the lines or routes (as above) shall have the
right and privilege of constructing that part of the
line embraced in their charter upon giving notice to
the Trustees of the Internal Improvement Fund of
their full acceptance of the provisions of this act spec-
ifying the portions of the route they propose to con-
struct; and upon the refusal or neglect of any railroad
company to accept within six months from the passage
of the act (January 6, 1855) the provisions thereof, any
other company duly authorized by law may undertake
the construction of such part of the line as they may
desire to make, which may not be in progress of con-
struction under a previous charter.   McClellan's Di-
gest, p. 591, sec. 6.

The capital stock of any railroad company accepting
the provisions of this act shall be forever exempt from
taxation; and the roads, their fixtures and appurte-
nances, including workshops, warehouses, vehicles and
property of every description,   *   *   *   *   shall be
exempt from taxation while the roads are under con-
struction, and for the period of thirty-five years from
their completion.   McClellan's Digest, p. 596, sec. 21;
Laws of Florida 1855, Chapter 610, sec. 19.

There were further provisions for aid in the construc-
tion of these roads of the Internal Improvement sys-
tem of Florida, notably, the grant of lands by the
State.   McClellan's Digest, p. 595, sec. 18.   And of
such lands as might thereafter be granted by Congress
to the State of Florida (sec. 23, p. 596), given to lines
of railroad constructing on any part of said routes,
and an endorsement of the bonds of the railroad com-
panies that might construct any portion of the indi-
cated lines of this internal improvement system, (Mc-
Clellan's Digest, sec. 3, p. 590) by the Trustees of the

Internal Improvement Fund, and a payment of the interest on said bonds during the construction of said roads. McClellan's Digest, p. 589, sec. 2; 594, sec. 14; 594, sec. 16.

And for the payment after completion by such companies of a semi-annual sinking fund of one-half of one per cent. for the ultimate redemption of the bonds. Ibid, 594, sec. 16.

The complainant is now the owner of all the lines of railroad constructed in Florida under the Internal Improvement act, specified in Chap. 4, east of the Apalachicola river. They are of the line from Tallahassee to St. Marks, constructed in the year 18—, and built by the Tallahassee Railroad Company, which accepted the provisions of said act and had its benefits.

The road from Quincy to Lake City, constructed by the Pensacola & Georgia Railroad Company, chartered in 1853, McClellan's Digest, p. 1048, Chap. 484, amended by reason of the Internal Improvement act by Chap. 728, December 15, 1855, McClellan's Digest, pp. 1053-4 and by Chap. 1573, act of December 13, 1866, the last amendment being particularly to authorize the company to sell to the Atlantic & Gulf Railroad Company the branch of their road commencing at Live Oak and running to the Georgia line, with all the rights, franchises and privileges of the said Pensacola & Georgia Railroad Company. McClellan's Digest, page 1054, sec. 23. And completed in 1864, and was constructed under the provisions of the Internal Improvement; was seized in 1868 with the Tallahassee road aforesaid, and sold by the Trustees of the Internal Improvement Fund for defaults in the payment of the aforesaid sinking fund (sec. 3, page 590 McClellan's Digest), and bought by E. M. Cheney, Wilkinson Call and associates, who were incorporated as a body politic

and corporate under the name of the Tallahassee Railroad Company, and vested with and entitled to enjoy and exercise the like powers, franchises and privileges granted to the Pensacola & Georgia and to the Tallahassee Railroad Companies. Chap. 1718, acts of 1869, sec. 1; McClellan's Digest, page 1101.

The road from Jacksonville to Quincy was built by the Florida, Atlantic & Gulf Central Railroad Company, chartered in 1853, Chapter 481, and which route was coincident with a part of the route indicated in the Internal Improvement system. The company accepted the provisions of the Internal Improvement act, built its line, was completed in 1860, made default in 1867 in payment of the sinking fund, and was seized and sold by the trustees in 1868 to W. E. Jackson and associates, who, by Chapter 1646, were on July 29, 1868, incorporated as the Florida Central Railroad Company, with the powers and franchises granted to the Florida, Atlantic & Gulf Central Railroad Company. (McClellan's Digest, p. 1006).

The road from Fernandina to Cedar Keys was built by the Florida Railroad Company, chartered by Chapter 482, January 8, 1853, amended by Chapter 729, December 14, 1855, to conform to the Internal Improvement act (McClellan's Digest, pp. 993-4, secs. 1-3), and completed in 1862; was seized in 1867 and sold for like defaults, and bought by Marshall O. Roberts and associates, who, the more certainly to retain the rights and franchises of the original company, it retained the charter and title of the Florida Railroad Company; changed by statute in 1872 to the Atlantic, Gulf & West India Transit Co. (McClellan's Digest, 1002).

Under the provisions of section 4 of Chapter 729, acts of 1855, authorizing the Florida Railroad Com-

686 SUPREME COURT.

Bloxham, Comp., et al. v. F. C. & P. R. R. Co.—Argument of Counsel.

pany to set off to persons desirous of constructing any portion of its line, in which event such portion may have a distinct organization with all the grants, rights, powers, duties and privileges of the Florida Railroad Company, that company in 1871 set off to the Peninsular Railroad Company, organized as a body politic, the right to construct a line from Waldo to Ocala, and this company built this line thereunder in and under the Internal Improvement act, and thence after operated the same. And in like manner and under like authority the Tropical Florida built in 1881 the line of railroad from Ocala to Wildwood.

The three first named lines of railroad, to-wit: the lines from Tallahassee to St. Marks, and from Quincy to Lake City, with branch to Monticello, and from Lake City to Jacksonville, were by Chapter 1716, act of June 24th, 1869, were incorporated, or attempted to be, as a consolidated line of railroad, under the name of the Jacksonville, Pensacola & Mobile Railroad Company, retaining all of the chartered rights of the constituent companies. This company in 1871 built the line of railroad from Quincy to Chattahoochee river. McClellan's Digest, pp. 1056, 1055, sec. 28.

There was default in the payment by Cheney and his associates of the purchase price of the Tallahassee and the Pensacola & Georgia Railroad companies, which continued, pending which the J., P. & M. Co. secured $4,000,000 of Florida State bonds by Chapters 1716 and 1731, (McClellan's Digest, pp. 1057–8). Default was made on these bonds. The case of Schutte et al. vs. Florida Central and J., P. & M. Railroads et al., in the Federal courts was pending continuously until May 31, 1879, when a decree was entered in favor of the Trustees of the Internal Improvement Fund for balance of the purchase money at said sales of 1867–8,

for $463,175.37 (McClellan's Digest, pp. 609–612, secs. 76–7–8–9–80–81, etc.), which passed to a judicial sale January 10, 1881, and purchased by Sir Edward J. Reed for associates, who organized the Florida Central & Western Railroad, retaining all chartered rights, to own and operate this property bonded it for $2,808,000 in same year.

The Transit (A., G. & W. I. T.) Railroad consolidated itself with the Peninsular Railroad in 1882, under the name of the Transit & Peninsular Railroad Company—each company having a bonded debt.

A road was about this time built from Jacksonville to Hart's Road, by a company known as the Fernandina & Jacksonville Railroad Company. And the Tropical Company made an extension to Leesburg from Wildwood.

In 1882 the Florida Central & Western Railroad Company, the Fernandina & Jacksonville, the Transit & Peninsular, and the Florida Tropical Railroad companies were consolidated by deeds of consolidation in conformity with section 37 of the general act of incorporation of railroads and canals (Chapter 1987, acts of 1874, McClellan's Digest, p. 288, sec. 37), into the Florida Railway & Navigation Company, which retained the rights of the original companies, (sec. 42, p. 289 Ibid). This company afterwards in 1883 extended its line of railroad from Wildwood to Panasoffkee, and later to Withlacoochee station, and from Leesburg to Tavares. And bonded itself in 1884 for an issue of $8,000,000 of bonds, having in the meanwhile an underlying issue on its constituent companies, which it was not able to retire: on the Florida Central & Western, $2,808,000; on the Atlantic, Gulf & West India Transit, $1,000,000; on the Fernandina & Jacksonville, $350,000; on the Peninsular, $300,000. For defaults in payment

of interest suits thereon were instituted in 1885. H.
R. Duval was appointed receiver November 1, 1885.
Decrees were made and sales of the railroads were had
in 1889, and the purchasers at such sales organized
this complaint, the Florida Central & Peninsular Rail-
road Company, retaining all prior chartered rights
under the law.

Without question the exemptions from taxation of
the lines of road and their equipments built on this
designated Internal Improvement system was recog-
nized and observed.   In 1874 the Legislature directed
that the property of all railroads should be assessed
for taxation, and prescribed the manner in which the
assessment should be made and the collection enforced.
Session Laws of 1874, p. 21, sec. 47 et seq., Chapter
1976.   Under authority of this law an effort was made
to assess and collect a tax from the Savannah, Florida
& Western (or Atlantic & Gulf) Railroad, on that part
of its road bought from the Pensacola & Georgia Rail-
road Company, to-wit: the line from Live Oak to the
Georgia State line.   The case went to the Supreme
Court of Florida, where, in a carefully prepared opin-
ion by Westcott, J., the court held that the exemption
from taxation of the lines of railroad built under the
Internal Improvement act, and on the line indicated,
was a contract, and the lines exempt therefrom.   Allen
vs. Atlantic & Gulf Railroad Co., 15 Fla. 637.

Again, in 1878, in Sullivan vs. Gonzalez, the same
court held that the exemption from taxation under
the eighteenth section of the Internal Improvement
act of the railroads and their appurtenances continued
to those companies who held the roads under assign-
ments or transfers from those constructing the roads.
That the exemption attached to the rem.   Sullivan vs.
Gonzalez, 16 Fla. 791.

In 1882 the Supreme Court, after a review of the whole question, supporting their previous conclusions that the exemption from taxation of these railroads was for the full period of thirty-five years from the date of completion, out of deference to the opinion of the Supreme Court of the United States, in the then recent case of Wilson vs. Gaines (103 U. S. 417), and because they could not say with absolute certainty that the rule applied to the facts in the cases of these roads would not restrict the immunity to the corporation owning the road when it was granted. Our Supreme Court entered a pro forma decree denying that the exemption continued for the benefit of the Louisville & Nashville Railroad Company, that had bought the road from Pensacola north to the State line; and for the sole reason that only by such a ruling could the question be carried to the Supreme Court of the United States. Palmes, Col., vs. L. & N. R. R., 19 Fla. 231; 109 U. S. 244. The tax was assessed under the act of 1881, and the decision of the Supreme Court of the United States was made November 19, 1883. The ruling of the Supreme Court of Florida was affirmed. 109 U. S. 244.

The revenue laws which contained the special direction for the levy of taxes on railroad property were:

Chapter 1976, sec. 47, p. 21, act of February 17, 1874—repealing all previous laws (revenue), sec. 66, p. 29.

Chapter 3099, sec. 45, p. 30, act of March 7, 1879—repeals as before, sec. 65, p. 38.

Chapter 3219, sec. 45, p. 35, act of March 5, 1881—repeals as before, sec. 65, p. 43.

The language of these several repeals is the same in each saving clause, and worthy of note here: " * * are hereby repealed: provided, nothing in this act

shall be so construed as to impair the validity of any assessment of taxes assessed prior to the passage of this act, nor any proceeding had or done, or that may hereafter be had or done, by any collector for the collection of any taxes heretofore assessed," having reference to the previous general revenue act.

The action of the Supreme Court of Florida in Louisville & Nashville R. R. Co. vs. Palmes, Collector, was the occasion of the assessment by the Comptroller, under the general law of 1881, of the then existing several lines now constituting the complainant line of railroad; and these assessments were thence after made; and in 1885 the Florida Railway & Navigation Company paid the several assessments thereon for the years 1882, 1883 and 1884, under protest. (See exhibit to bill of complaint).

The several revenue acts of Florida, without reference to their dates, as to omitted property had this clause: "If any assessor when making his assessments shall discover that any land in his county was omitted in the assessment roll of either or all of the three previous years, and was then liable to taxation, he shall, in addition to the assessment of such land for that year, assess the same separately for such year or years, that it may have been so omitted, at the just value thereof in each year; * * and such assessment shall have the same force and effect as it would have had in the year when such omission occurred; * * * but no lands shall be assessed for more than three years' arrears of taxes, and all lands shall be subject to such taxes so omitted into whosoever hands they may come." 1874 Chap. 1976, sec. 27, pamphlet laws, page 16; 1879 Chap. 3099, sec. 27, pamphlet laws, page 25; 1881 Chap. 3219, sec. 27, pamphlet laws, page 30; 1885 Chap. 3413, sec. 26, pamplet laws, page 26. This

latter chapter also repealed all existing general revenue laws, with the reservation as above. Ibid, page 40.

By each act for the assessment and collection of revenue real property is "construed" to include land, and the terms "land and real estate," are considered as convertible terms; and all property including the rolling stock of a railroad company is by statute declared to be realty. McClellan's Digest, sec. 30, page 286, and the several revenue acts.

On February 12th, 1885, an act, Chap. 3558 (page 4 pamphlet laws), was approved, for the "assessment and collection of taxes on railroads and properties thereof, for the years 1879, 1880, 1881 as to which there was no assessment," directing the Comptroller to cause the same or so much thereof as was not assessed to be assessed for State and county (purposes) taxes, and requiring that 20 per cent. shall be collected with the taxes of 1885, and thence after in like amount anaually, until the whole amount was paid; and declaring that the taxes thereon shall be the same in amount as they would have been if assessed in either year of the omission. Proceeding under this act, Comptroller Barnes made certain assessments on this company's property then of the Florida Railway & Navigation Company, and against that company in whole for the years 1879-80, and in amendment of what was claimed as a partial assessment for 1881, amendatory thereof.

The bill was filed, first, to declare the exemption from taxation under the 18th section of the Internal Improvement act a continuing exemption for the full period of thirty-five years from the date of the completion of the several portions of the line of its road constructed on the designated route by the respective original companies: In other words, to have it decreed that the law made the exemption a property right, fol-

lowing the property into whosoever hands; secondly, to have a decree for the recovery of the taxes, $140,-073.61, paid in 1885, under protest; and, thirdly, to enjoin the enforcement of the writ of Comptroller Bloxham, made in pursuance of the statute of 1891 (Chap. 4073), under which the sheriff of Leon county has advertised for sale so much of this company's line as was in existence in the year 1879, 1880 and 1881, and its property.

The answer, which was filed in this case as required to be amended under rulings by the Circuit Court on exceptions thereto, admits the facts as alleged in the bill; and hearing was had on bill and answer before the honorable Circuit Judge of the Third Circuit, vice the Judge of the Second Circuit, disqualified as having been of counsel for the defendants.

Decree was rendered denying to complainant the relief as prayed for in the first and second instances, supra, and enjoining the collection of the tax, as prayed for in the third instance; from which decree both parties appeal to this court. The complainant assigning as error the rulings as noted first and second, and the defendants as noted in the third instance.

### ARGUMENT.

Tax is a portion of the property of individuals which is taken from them by the government and is disposed of by it; 1 Desty on Taxation, p. 1; or, rather, a sum of money assessed on the person or property of a citizen by the government for the use of the nation or State. Ibid, p. 2. The theory of all taxation is, that taxes are imposed as a compensation for something received by the tax-payer. Ibid, p. 4. Taxes are levied for general public purposes on all alike.

A tax law is a legislative enactment which defines the measure of every man's duty in support of the

public burthens, and provides the means of enforc-
ing it.  Ibid, p. 9.  The tax does not arise out of con-
tract, and is not a debt, in the general commercial sense.
Ibid.

The power of taxation is an incident of sovereignty
—the right of the State is plenary and reaches every-
thing, and all persons and property within the juris-
diction, and is lodged in the legislative department,
and the Legislature alone determines the objects and
persons to be taxed, subject to constitutional restric-
tions.  The tax is imposed on the person of the owner
(Ibid, p. 7.)  Property is resorted to for the purposes
of ascertaining the amount of the tax, yet the indi-
vidual pays the tax.  There is a difference between
general tax and local assessments.  Taxes and assess-
ments are not synonymous terms.  So does levy and
assessments have different meanings.  Assessments
contemplate some local value from the local supervis-
ion by which there is increased value that should bear
extra burden.  Ibid, p. 5.  In a more comprehensive
sense, it is also a step in all public taxes.  All general
tax bills are revenue bills; must be construed so as to
accomplish the legislative purpose, and every requisite
of the statute having benefit to the owner must be
strictly complied with.  Moseley vs. Tift, 4 Fla. 402.

Levy is a legislative function and declares the sub-
jects and rates of taxation.  The assessment is the act
of listing the several properties of the tax-payer, and
the act of attaching the respective valuations thereto.
Listing the subjects, attaching the value (1 Desty,
457.)  The time of assessment and the period covered
for assessment must be in accordance with the law.
Ibid, 458-60; North Carolina R. R. Co. vs. Commission-
ers of Alamance, 77 N. C. 4; Johnson vs. Royster, 88
N. C. 194; Fairfield vs. People, 94 Ill. 244; 1 Desty on

Taxation, and authorities cited on pages 1, 2, 4, 9, 51, 57, 81, 432, 443, 456 and 457 and 460.

There can be no levy or assessment of a tax except in pursuance of law.

From 1879 until the Revised Statutes went into effect there was no lien for taxes on property in Florida until an assessment. L'Engle vs. F. C. & W. R. R. Co., 21 Fla. 353; Heine vs. Levee Commissioners, 19 Wall. 655. 2 Desty, 736.

There was no attempt to assess the tax now sought to be collected until November 1885, consequently there was no lien on this property for these taxes.

The bill sets forth, on page 16, the consolidation of certain companies into the Florida Transit & Peninsular Railroad Company in 1882. Prior to this time the line of railroad from Fernandina to Cedar Keys had continuously been the property of the railroad company that constructed the same; and to which company the exemption from taxation for thirty-five years from its completion (say 1860) attached under the Internal Improvement act. The consolidation of the various companies into the Florida Railway & Navigation Company, in February, 1884, is also set out fully on pages 16-18 of the bill. It is established that both these consolidations were accomplished by radical changes in the holdings of the capital stock, and with the introduction into the new companies, respectively, parties not before interested in either of the constituent companies; and that such changes in holdings were equal to more than one-half in value of each and every of said properties. Were the companies thus formed new, or the old companies? To take away the exemption from taxation under the Internal Improvement act, generally from such of the lines constructed thereunder, and particularly and necessarily from the line

from Cedar Keys to Fernandina, it is necessary to hold that the companies formed were new companies. Louisville & Nashville R. R. Co. vs. Palmes, 109 U. S. 256.

The broad authority for the formation of a new company by the consolidations and transfers of interests is given by section 28 Chap. 1987 laws of Florida, approved February 19th, 1874; McClellan's Digest, sec. 27, p. 285; and the lines of railroad from Jacksonville to River Junction, with branches from Drifton to Monticello, and from Tallahassee to St. Marks, upon which the taxes, as a part of the assessments, were made in 1885 for the years 1879, 1880 and 1881, were for those years and until January 10th, 1881, the property of a railroad company known as the Jacksonville, Pensacola & Mobile Railroad Company, on which last named day the said lines of railroad were sold at judicial sale under foreclosure proceedings, and were bought by Sir Edward J. Reed, who organized a corporation under the general law of Florida for the incorporation of railroads and canals; which afterwards, and until the consolidation of 1884, continued to own and hold such lines of roailroad. We have therefore the formation of a corporation by consolidation and by judicial sale under foreclosure proceedings intervening the vesting of the taxed lines in the Florida Railway & Navigation Company, not in existence until 1884, but taxed in 1885, and the divesting of the previous owners of their title to the property owned by them for the assessed years of 1879, 1880 and 1881. And the purchaser, or new company, in 1884, when it acquired the property, was put on enquiry only as to whether the taxes had been paid that had been assessed, or, at most, and for this part of my argument, without enquiry only as to what might be assessed as omitted property for the preceding

years. The Comptroller, then clothed with the power to assess railroad properties, had no authority to assess for but the current year.

But if it be contended that the defendants are estopped by the seizure and forced payment for the years 1882, 1883 and 1884, as set forth in the bill, that the action of the Comptroller was under the general power to assess for the previous three years of omission of assessment, the assessment for the years 1882, 1883 and 1884, made in 1885, was an exhaustion of the State's power to tax the property of its taxpayers.

The act of 1885 (Chapter 3558) authorizing the assessment of the railroad properties for the years 1879, 1880 and 1881, was obnoxious to the Constitution of the United States, forbidding the States to pass such laws impairing the obligation of contracts. Article I, section 10, clause 1; Revised Statutes of Florlda, page 5. And is obnoxious to the Constitution of Florida (Bill of Rights, section 17, R. S., page 46), in that it impairs the obligation of the contract of purchase by the Florida Railway & Navigation Company; and of Article II, section 20, in that it is a special law for the assessment and collection of taxes for State and county purposes (R. S., page 49); and of Article IX, section 1 (R. S., page 62), in that it is not a uniform assessment of all omitted property, and is discriminating in the mode of payment. And the act is incomplete within itself, and refers to an act which had been repealed; was retrospective and interfered with vested rights.

The act of 1891 (Chapter 4073, Revised Statues, page 1010,) depends on the act of 1885 (Chapter 3558) for support, and if the latter is faulty, this act necessarily fails.

We have already seen that there can be no tax, or tax lien, until there is an assessment; and no assess-

ment until there is a law authorizing the assessment. And that there was no assessment of any of this property for taxation until after the decision of the Supreme Court of the United States in 1883, in the case of Louisville & Nashville R. R. Co. vs. Palmes, 109 U. S. 244, and in this because prior to the rendition of the judgment of the Supreme Court of Florida at the June Term, 1882, in the case of Palmes vs. Louisville & Nashville R. R. Co. (19 Fla. 231), it had been uniformly held that such properties were exempt from taxation.    Allen vs. Atlantic & Gulf R. R. Co., 15 Fla. 637; Sullivan vs. Gonzales, 16 Fla. 791; and at nisi prius of Palmes vs. Louisville & Nashville R. R. Co.    The reasoning of which latter case in the Supreme Court was inconsistent with the judgment, as we have said, for the reason there given.

To the June Term of 1882 these decisions determined affirmatively the exemptions of this railroad property from taxation; and, whether right or wrong, it was the settled law.    Wilson vs. Fridenburg, 21 Fla. 389; Tyler vs. Magwire, 17 Wall. 253; Supervisors vs. Kennicott, 94 U. S. 498.

We have seen that the revenue acts of 1874 and 1879 were repealed in 1881, and that the act of 1881 was repealed in 1883.    So that in 1883 there was in existence no law authorizing assessments prior thereto.    And this continued to be the condition when, in 1885, the Comptroller, under section 26, Chapter 3413, p. 26, act of 1883, undertook to assess the railroad properties here involved for the years 1881, 1882, 1883 and 1884, which were paid under protest as set forth in the bill.

So when of the Florida Railway & Navigation Company was formed in 1884, as stated in the bill (page 18), by consolidation, and the formation of new company with new rights and interests, the law of the State of

Florida then in force became the law of the contract and vested rights were acquired by the company which could not be impaired or changed by subsequent legislation. Consolidation, American Digest, 1890.

A consolidation of two or more railroad companies operates as the creation of a new corporation wholly distinct from the constituent companies. American Digest, 1890, page 3205, sec. 199; State vs. Railroad Company, — Mo. —, 12 S. W. Rep. 290; Keokuk & W. R. R. Co. vs. County Court, 41 Fed. Rep. 305.

A contract is an agreement to do or not to do a particular thing. The law binds him to perform his undertaking, and this is the obligation of a contract. Chief-Justice Marshall in Sturges vs. Crowninshield, 4 Wheaton, 122. Any law which increases or releases this obligation must impair it. Ibid; Ogden vs. Saunders, 12 Wheaton, 213; 7 Myer's Fed. Dec., Contracts, secs. 1944, 1945, 1946, 1947, 1952, 1959, 1967, 1968, 1969, 1970, 1977, 1986.

One of the tests that a contract has been impaired is that its value has by legislation been diminished. It must not be impaired at all. It is not a question of degree, or manner, or cause, but of any encroachment dispensing with any of its force. 7 Myer's Fed. Dec., supra, secs. 1667, 1735, 1736, 1737, 1664, 1667, 1976, 1977. Any impairment is prohibited. Ibid, 1614, 1642, 1643.

History of the contract clause in the Constitution: Edwards vs. Kearzey, 6 Otto, 595.

The State shall pass no law attaching to the acts of individuals other effects or consequences than those attached to them by the laws existing at their date. 1 Sheppard's Touchstone, 68, 70, 73; 7 Myer's Fed. Dec. sec. 1961; Myer's Vested Rights, secs. 5, 6, 18, 19, 20, 23, 31, 1048, 1049; Hans vs. Louisiana, 134 U.

S. 1. What are contracts within the clause: 3 Parsons: on Contracts, bottom pages 480–7; Edwards vs. Kearzey, supra.

The prohibition of laws impairing the obligation of contracts is a limitation of the legislation of States on the subject of taxation, as well as on other subjects. Murray vs. Charleston, 6 Otto, 432; 7 Myer's Fed. Dec., sec. 1858.

State may bargain its right of taxation: New Jersey vs. Yard, 95 U. S. 104, 116, 117.

The legislative power is not transcendent so that it may at its will do that which amounts to an arbitrary divesture of private property. Essex Public Road Board vs. Skinkle, 104 U. S. 342. Cannot take from complainant its property in which it had a vested right. Ibid, 339. Whether rights have become vested under an assessment for taxes, depends on circumstances. Ibid, 340; Commissioners vs. Lucas, 93 U. S. 108; Newton vs. Commissioners, 100 U. S. 548.

Retrospective legislation is constitutional when vested rights are not affected; but to interfere with such vested rights is prohibited. Dobbins vs. First National Bank of Peoria, 112 Ill. 553; Peters vs. Auditor, 33 Grattan, 368; Hosmer vs. People, 96 Ill. 58. A right of property is a vested right. Calder vs. Bull, 3 Dallas, 386; Myer's Vested Rights, secs. 3, 6, 18, 22, 23, 25, 35, 45, 183. Vested rights are sacred. 7 Myer's. Fed. Dec., sec. 2277.

Requisites of a tax lien, authority of a law therefor, assessment thereunder, proper listing and valuation within the time and manner provided, are not due until assessed, and are not a lien. 1 Desty on Taxation, 449; George vs. Dean, 47 Texas, 73; State Auditor vs. Jackson County, 65 Ala. 142; Milliken vs. Benedict, 8 Penn. St. 169; Tallman vs. Janesville, 17 Wis.

71; Marsh vs. Supervisors of Clark County, 42 Wis. 502; L'Engle vs. Florida Central R. R. Co., 14 Fla. 266; Perry County vs. Railroad Co., 58 Ala. 560; New Orleans vs. Day, 29 La. Ann. 416; North Carolina R. R. Co. vs. Commissioners of Alamance, 77 N. C. 4; Perry County vs. Selma, Marion & Memphis R. R. Co., 65 Ala. 391.

By subsequent enabling acts the Legislature may provide that back taxes may be collected. 1 Desty on Taxation, p. 89; Fairfield vs. People, 94 Ill. 251; Hyde Park vs. Ingalls, 87 Ill. 11.

Where by a defective levy they failed to be collected: Fairfield vs. People, supra; Hyde Park vs. Ingalls, supra; Irvin vs. New Orleans, St. L. & Chicago R. R. Co., 94 Ill. 105; Union Building Association vs. Chicago, 61 Ill. 439; Tallman vs. Janesville, 17 Wis. 71; Cross vs. Milwaukee, 19 Wis. 509; Lebanon vs. Ohio & Miss. R. R. Co., 77 Ill. 539; Boardman vs. Beckwith, 18 Iowa, 292; City of Jacksonville vs. Basnett, 20 Fla. 525; Avery vs. City of Pensacola, 20 Fla. 551; Sullivan vs. Walton, 20 Fla. 552; Advisory Opinion, 13 Fla., 687; and see City of Pensacola vs. Louisville & Nashville R. R. Co., 21 Fla. 492. And the right to pass such laws is not affected by time. Ibid; North Carolina R. R. Co. vs. Commissioners of Alamance County, 82 N. C. 259. A statute conferring authority to impose taxes must be construed strictly. Moseley vs. Tift, 4 Fla. 403; Campbell County Court vs. Taylor, 8 Bush, 206; Beckwith vs. English, 51 Ill. 147.

In 1879–80, and until January 10th, 1881, part of the taxed roads belonged to other companies, passed on last-named day by judicial sale to Reed, and afterwards to Florida Central & Western Railway Company, and in 1884 to the Florida Railway & Naviga-

tion Company. Until the June Term, 1882, of this court, these roads were held to be exempt under the law by our highest courts.

A statute that has been settled by construction becomes, so far as contract rights are concerned, as much a part of the statute as the text itself, and a change of decisions is to all intents and purposes the same in its effect on contracts as an amendment of the law by legislative enactment. 7 Myer's Fed. Dec., sec. 1873. Louisiana vs. Pilsbury, 105 U. S. 278. The change is prospective, not retrospective. Douglass vs. County of Pike, 101 U. S. 677. The exemption continued to 1882. See McClellan's Digest, p. 896, sec. 105; Resolution of March 4, 1881.

It is claimed by text-writers (Burroughs on Taxation, p. 232, and Cooley on Constitutional Limitations, 254), that the State may by subsequent legislation provide for the levy of taxes which have been improperly omitted for previous years, as was done in North Carolina Railroad Co. vs. Commissioners of Alamance County, 82 N. C. 259; Fairfield vs. People, 94 Ill. 244; Union Bulding Ass'n vs. Chicago, 61 Ill. 439; Tallman vs. Janesville, 17 Wis. 71; Cross vs. Milwaukee, 19 Wis., 509; People vs. Commissioners of Taxes, 91 N. Y., 593; City of Kansas vs. Hannibal & St. Josephs R. R. Co., 81 Mo. 285; Boardman vs. Beckwith, 18 Iowa, 292. But all of these cases were under statutes which did not, as ours has always done, limit the power to assess for omitted years indefinitely, and was upon the theory that what should have been done ought to to be done; and are, I believe, without exception curative of previous imperfect assessments. But I submit that no case can be found even among this class where the issue was direct between a purchaser for value without notice and the taxing power. No con-

tention is made against the power to cure defects in previous assessments, for in such cases there is ample notice.

"That property subject to, but which has escaped taxation is, in the hands of a subsequent purchaser subject to taxation for the years in which it escaped through the inadvertence of any of the officers who had duties to perform with regard to assessing, levying or collecting the taxes, is intimated clearly in State vs. St. Louis, Kansas City & Northern Ry. Co., 77 Mo. 202; and expressly held in Fairfield vs. People, 94 Ill. 244; Tallman vs. Janesville, 17 Wis. 71; Cross vs. Milwaukee, 19 Wis. 509; Cooley on Taxation, 232, and Cooley on Constitutional Limitations, 254. City of Kansas vs. Hanninbal & St. Joseph R. R. Co., 81 Mo. 285," is the utmost extent in support of the contention that a case like this can be maintained in which any of the authorities have gone. This point was an unnecessary promulgation about a tax levy which was not sustained, and was made by the same court, and the same judge speaking for the court, and relying upon one of the decisions of the same court, through the same mouthpeace, where on the same subject the following language was used: "Is it within the power of the Legislature, as against an innocent purchaser of property, to levy taxes for years before he purchased, and declare a lien therefor on the property which was not subjected to taxation for those years? * * * This would be a retrospective law, impairing the obligation of the contract between the grantor and grantee. * * imposing burdens on the latter which the former should have borne. * * It would be in effect to change one with a pecuniary debt or obligation which rested upon another. There is no warrant in the Con-

JANUARY TERM, 1895.            703

Bloxham, Comp., et al. v. F. C. & P. R. R. Co.—Argument of Counsel.

stitution for such legislation." State vs. St. Louis, Kansas City & Northern Ry. Co., 77 Mo. 202.

The other case relied on for the above statement (Fairfield vs. People) was on an act, by the court characterized as an act to assist the remedy for an enforcement of a lien and was under an act passed in 1862 for the re-assessment of certain town taxes, made necessary by certain difficulties growing out of previous unconstitutional efforts at taxation; and Cross vs. Milwaukee was a like case.

Commenting on these cases, the learned editor in a note to the 81 Mo. case, supra, and speaking of two of the three cases above referred to, 22 Am. & Eng. R. R. Cases, page 246, says: "But these cases do not decide that an original assessment and levy of taxes for years preceding that in which the assessment made is lawful. The assessment for preceding years can go only to the extent of correcting errors and supplying omissions in the tax levies of former years. An entirely new tax is not constitutional."

It was not until the affirmance by the Supreme Court of the United States of the Palmes case, at the October Term, 1883, that the liability to taxation of the railroads in Florida, built under and on the indicated routes of the Internal Improvement act, was entertained by the authorities of the State, or by scarcely any citizens of the State other than some "lawyers whose opinions are entitled to respect."

While the Comptroller was the proper officer then to make the assessments, he could do so only under the existing revenue laws, the act of 1883, Under the section authorizing any assessor who found in the assessment of taxes that there had been an omission to assess for all or either of the three preceding years. He might, as he attempted to; act under that authority

and assess for the three previous years, 1881, 1882 and 1883, but this assessment should have been against the Atlantic, Gulf & West India Transit Company, the Transit & Peninsular Railroad Company, and the Florida Central & Western Railroad, etc., the several owners of the roads for the year of assessment. State vs. Memphis & Charleston Railroad Co., 14 Lea, 56; 1 Desty on Taxation, 408, 410, 412.

It will not do to say that the above limitation did not apply to railroads. There was no earthly authority for the assessment of 1882, 1883 and 1884, which were made, and paid under protest, if it was not under that act. For various decisions on this contractual limitation of the power to go back for three years in search of omitted lands, there being no power for assessing omitted personalty. See Rhoads vs. Given, 5 Houston (Del.), 183; 2 Desty on Taxation, 739 to 743.

While it is competent to classify "railroads as distinct from other real estate, such as farms and city lots," and to subject them to different means and methods for ascertaining its value for purposes of taxation, and to ascertain such valuations for that purpose by different means than those adopted for determining such valuations of corporations, such as bridge, mining, street railway, gas and water companies. Missouri vs. Lewis, 101 U. S. 22-30; Cincinnati, New Orleans & Texas Pacific R. R. Co. vs. Kentucky, 115 U. S. 338.

Such discrimination under a Constitution which requires "a uniform and equal rate of taxation under" such regulations as shall secure a just valuation for all property both real and personal, as was attempted in the enactment of Chapter 3558, is not justified. For this case manifestly only railroad properties that were not assessed for taxes for the years 1879, 1880 and

JANUARY TERM, 1895. 705

Bloxham, Comp., et al. v. F. C. & P. R. R. Co.—Argument of Counsel.

1881, or any of such years, were authorized to be assessed for omitted years. When by the very next act, Chap. 3559, lands of the St. Johns Railway Company, which had escaped taxation wholly or in part for years covering the same period as the years charged against this railroad property, were subjected to a change to be effective in the future, and properties of large values, to-wit. lands, etc., (see bill, page 25) which were omitted from assessments for like years, were permitted to remain untaxed. The act was not one of classification of property for purposes of taxation, and the valuation of different classes by different methods.

The assessments were proper to be made without the act of 1885, or were improperly made, for that act was clearly so discriminating against this railroad's property, and in favor of the other properties of large values which had escaped taxation, as to be without uniformity or equality, and to amount to a special act for the assessment of taxes on a particular property. Ibid; 2 Desty on Taxation, 1251.

As to the authority under the Constitution to pass the law in question (Chap. 3558), and as to the non-uniformity of that act in its operation, see authorities cited in 1 Desty on Taxation, page 100 et seq., and page 175, and construction thereon in the several States, page 176-191.

Did the Constitution of Florida of 1868 impair the rights of exemption under the Internal Improvement act retrospectively, so that the privileges of these several roads, in rem, acquired under that act were diminished. Section 24 of Article XIII, provides that the property of all corporations theretofore or thereafter incorporated should be subject to taxation. Louisville & Nashville R. R. Co. vs. Palmes, 109 U. S. 244,

holds upon this point that after the adoption of this Constitution there could be no corporation created capable in law of accepting and enjoying the exemption from taxation.

In Gonzales vs. Sullivan, 16 Fla. 791, it was held that the grant of exemption from taxation was a contract between the State and the companies which then or thereafter owned the roads, should enjoy the exemption from taxation for a given time, and that these rights and privileges were annexed by the terms of the statute to the properties at once. Under similar statutes the same views were adopted by the Supreme Court of Minnesota, in First Devison of the St. Paul & Pacific R. R. Co. vs. Parcher, 14 Minn. 297, and Chicago, Milwaukee & St. Paul Ry. Co. vs. Pfaender, 23 Minn. 217; and of Tennessee, in Knoxville & Ohio R. R. Co. vs. Hicks, 9 Baxter, 442.

Were it not for the Palmes case, supra, all with perhaps the exception of the line from Lake City to Jacksonville of the lines of this company's railroad would until now be exempt from taxation, and this without regard to ownership.

The dictum that no corporation could be formed in Florida after the adoption of the Constitution of 1868 capable of enjoying the exemption from taxation which had annexed under the statute to the properties themselves, and entered into and increased the values thereof under the sanction of the highest courts of the State, is broader than was necessary for the determination of the particular case under consideration. A general statement of law in this authoritative manner is always dangerous; and the court in laying down this broad rule violated the obligations between the State and the holders of these properties, as it never would have permitted a State court to do.

The exemption was not a gratuity, but it was a studied, careful, business like incentive to capital to discount the future, to build a system of railroads over the entire State whose population was less than three to the square mile, and where it was unreasonable to hope that for many years there would be any return for the money thus invested in the work of development.

The contention for exemption made for these properties can be placed on a basis distinguished from that of the road from Pensacola to the Alabama State line, upon whose claim the Palmes case in 109 U. S. was decided. For the lines here contended for were those of the original system indicated in the fourth section of the Internal Improvement act, whereas the other line was provided for by subsequent amendment.

In addition to the forcible and conclusive reasonings of our own Supreme Court in the matter of these exemptions in cases cited, I will content myself with a reference to a few of the many cases in the courts holding that legislatures and constitutional conventions can not take away privileges thus annexed to property: Humphrey vs. Pegues, 16 Wallace, 244; Wilmington Railroad vs. Reid, 13 Wallace, 264; Jefferson Branch Bank vs. Skelly, 1 Black, 436; The Binghampton Bridge, 3 Wallace, 51; Minot vs. Philadelphia, Wilmington & Baltimore R. R. Co., 18 Wallace, 206; Gordon vs. Appeal Tax Court, 3 Howard, 133; People vs. Roper, 35 N. Y. 633.

If the property was not liable to the tax extorted from it, under protest, the same should be restored. And if, from either of the several causes set forth in the bill and not denied, it was not collectable, the same should not be returned. The propositions are familiar ones, and are insisted upon.

LIDDON, J.:

A three-fold object was sought to be accomplished by the bill of complaint; (1) to have it decreed that the exemption from taxation under the 18th section of the Internal Improvement act was a continuing exemption for thirty-five years after the completion of the several lines of railroad constructed on the routes in said act designated, and that said exemption attached to the *rem*, following the property into whosoever hands the same might come; (2) to have a decree for the recovery by the complainant, as successor of the Florida Railway & Navigation Company, of $140,812.47 paid by said company in 1885, for taxes of 1882, 1883 and 1884, to the State of Florida, alleged to be illegal, and to have been paid under duress and upon protest; (3) to enjoin the collection of taxes by the defendants for the years 1879, 1880 and 1881, which were sought to be collected under the provisions of the statutes, Chapters 3558 and 4073 laws of Florida. The first two objects of relief were refused by the court below, but the third was granted. Both parties allege in their briefs that the complainant and the defendants each appealed from the final decree below. The record shows an appeal by the defendants only. Both sides have presented the whole case upon the principle that an appeal in chancery is practically a rehearing, and opens up the whole case to the respondents. Southern Life Insurance Company vs. Cole, 4 Fla. 359. We consider the whole case, and whether the complainant below was entitled to any of the different matters of relief for which it prayed in its bill of complainant.

The question involved in the first relief prayed for is easily disposed of. The claim that the exemption provided for in the 18th section of the Internal Im-

provement act, Chapter 610 laws of Florida (acts of 1855-6, page 16, McClellan's Digest, sec. 21, page 596), is a continuing exemption, that it is an incident of property attached to the *rem*, and following it into whosoever hands the same may come, can not be maintained in this State. Neither the complainant in this case nor its immediate predecessor is the original builder of the railroads which are sought to be exempted, and both are corporations organized since 1868. That the right of exemption which under the Internal Improvement act of 1855 vested in the original owners and builders of the roads exempted, was a personal privilege and did not pass with the assignment of the property, is by the decision of the Supreme Court of the United States, in the case of Louisville & Nashville R. R. Co. vs. Palmes, 109 U. S. 244, a proposition beyond the reach of cavil or controversy. It is no more open to discussion in this State. The complainant is a corporation which has come into existence since the adoption of the Constitution of 1868 and the amendments thereto in 1875. Section 24 of Article XVI of the Constitution of 1868, as amended by Article XI of the amendments of 1875, as shown by Chapter 2041 laws of Florida, reads as follows: "The property of all corporations, whether heretofore or hereafter incorporated, shall be subject to taxation, unless such property be held and used exclusively for religious, educational or charitable purposes." No corporation could be created since the adoption of this Constitution, capable of accepting and enjoying the exemption from taxation, which was claimed by the complainant. Louisville & Nashville R. R. Co. vs. Palmes, *supra*.

It is alleged in the bill of complaint, and admitted by the answer, that certain lines of railroad of the complainant built in the years 1877, 1881 and 1883

were built upon the lines designated by the Internal
Improvement act, in accordance with the provisions of
the same, and had been duly accepted by the Trustees
of the Internal Improvement Fund as completed; and
that they were acquired by the complainant by pur-
chase from corporations composed wholly or in part
by consolidation of the building corporations. It can
not be justly claimed that there was a vested right to
exemption from taxation of these roads under the
eighteenth section of the Internal Improvement act.
They were all property built or acquired by corpora-
tions coming into existence after the adoption of the
Constitution of 1868, and whether in the hands of the
original building corporations or their assignees and
successors, were clearly liable to taxation under that
Constitution. The relevant portion of the Constitu-
tion of 1868, as amended in 1875, has already been
quoted. As it originally stood, section 24 of Article
XVI of the Constitution of 1868 read as follows: "The
property of all corporations, whether heretofore or
hereafter incorporated, shall be subject to taxation,
unless such corporation be for religious, educational
or charitable purposes." The only change made by
the amendment of 1875 was that instead of excepting
from taxation the general property of religious, edu-
cational or charitable corporations, the property ex-
cepted was required "to be held and used exclusively
for religious, educational or charitable purposes."
Under the section of the Constitution under discus-
sion, as it originally stood, or as it stood after the
amendment of 1875, the railroad and other property
of corporations is brought into existence and acquired
while the above quoted constitutional provisions were
in force, were subject to taxation in like manner as
other property. Whatever might be said of vested

rights of exemption from taxation of railroads built under the Internal Improvement act before the adoption of the Constitution of 1868, while remaining the property of the corporations which built them, there can be no force in an argument which claims that notwithstanding the constitutional provisions quoted, the eighteenth, or exemption, section of the Internal Improvement act conferred a vested right to exemption from taxation of railroads built by corporations created after the Constitution of 1868 became the paramount law of the State. It can not be said that it impairs a vested right to enforce the provisions of the Constitution as to things done and to property created and acquired after they are in full force and effect, and after the exemption provisions of the eighteenth section of the Internal Improvement act were thus repealed by a later Constitution.

The second matter of relief sought by the bill of complaint was to recover from defendants the sum of $140,812.47, alleged to have been paid by the Florida Railway & Navigation Company on the 28th of May, 1885, to William D. Barnes, Comptroller of the State of Florida. This money, as shown by the bill, was claimed by the State of Florida for taxes assessed against said Florida Railway & Navigation Company for the years 1881, 1882, 1883 and 1884. These taxes are alleged to have been paid under duress, because the State's officers, including the executive of the State, had threatened to sell the railroad of said company on account of said taxes, and to put the purchaser at such sale into possession. The taxes collected are alleged to be illegal on account of the exemption of the property from taxation. The money sought to be recovered was paid to the Comptroller officially, and for the State for which he was acting. The recov-

ery is not sought from the defendants individually, but from the State. We can not enter into the merits of this portion of the controversy. The defendants in their answer denied the jurisdiction and power of the Circuit Court to grant this part of the relief prayed for in the bill of complaint. The court below denied the relief upon the ground that the money sought to be recovered had been "lawfully exacted and collected" by the State. The correct order would have been to have dismissed this branch of the case for want of jurisdiction to hear and determine it. The suit for this purpose, while against the two officers of the State named as defendants, was to all intents and purposes a suit against the State of Florida; a judgment or decree against them would be a judgment and decree against the State. A State can not be sued without its consent. If it were admitted that the defendants who were sued as officers of the State could bind the State by consent to the suit, the State did not so consent in this case. On the contrary, they especially reserved "all advantage of exception   *   *   to the jurisdiction and power" of the court "to grant the relief" in question. The nonliability of a sovereign State to be sued, is a principle old, well-established and universally prevalent. Cornwall vs. Commonwealth, 32 Va. 644, S. C. 3 Am. St. Rep. 121, Carr vs. State, 121 Ind. 264, S. C. 22 Am. St. Rep. 624; McWhorter vs. Pensacola & A. R. R. Co., 24 Fla. 417, 5 South. Rep. 129; Hans vs. Louisiana, 134 U. S. 1. By saying that the State can not be sued, it is not meant that no judicial action whatever can be taken against the State, but confining ourselves to the facts of this particular case, that a suit like that before us, whether in the form of a bill in equity or in the nature of an action of assumpsit, or for the recovery of money, does not lie against the

sovereign State.   Opinion of Iredell, Justice, in Chisholm vs. Georgia, 2 Dall. 419.   In speaking upon this subject the Supreme Court of the United States, in the conclusion of its opinion in the case of Hans vs. Louisiana, *supra*, say:  "To avoid misapprehension, it might be proper to add that although the obligations of a State rest for their performance upon its honor and good faith, and can not be made the subjects of judicial cognizance, unless the State consents to be sued or comes itself into court, yet where property or rights are enjoyed under a contract or grant made by a State, they can not be wantonly invaded.  While the State can not be compelled by suit to perform its contracts, any attempt upon its part to violate property or rights acquired under its contract, may be judicially resisted," etc.   It is only upon the principles announced in the two last sentences of the quotation above, that the court below had jurisdiction to determine the matters involved in the other object of relief sought by the complainant beside that now under immediate consideration.

The Constitution of Florida of 1885, section 22 of Article III, is as follows: "Provision may be made by general law for bringing suits against the State as to all liabilities now existing or hereafter originating. The nineteenth section of Article IV of the Constitution of 1868 was the same.   No such provision having been made by the Legislature, the section quoted is inoperative to change the general principles upon which we hold that the State is not liable to be sued.

The next and third object sought to be accomplished by the bill of complaint was decided in favor of the complainant below.   This was the relief prayed for and granted, adjoining the collection of taxes for the years 1879, 1880 and 1881, upon certain railroads and

appurtenant property of the complainant. These taxes were assessed and levied under the act of 1885, Chapter 3558 laws of Florida, page 4. Said act reads as follows: "That in all cases in which any railroad or the properties thereto belonging or appertaining in this State, in the tax years commencing March 1st, 1879, 1880 and 1881, or any of such years, were not assessed for taxes for such years, it shall be the duty of the Comptroller to cause the same, or so much thereof as were not assessed, to be assessed for State and county taxes, and twenty *per centum* of the taxes so assessed for said years, and now unpaid, shall be collected at the same time the taxes for the year 1885 shall be assessed and collected; and each year thereafter an additional twenty *per centum* of said taxes shall be collected, at the same time and in the same manner as the taxes for such year are collected, until the whole amount of said unpaid taxes for the years 1879, 1880 and 1881 are paid. The taxes to be assesed under this act shall be the same in amount as they would have been had they been assessed in such years or any of them as to which there was a failure to assess." The warrant issued and the levy was made and proceedings to enforce the collection of the taxes by sale of the railroads assessed were taken under the act, Chapter 4073, laws of Florida. Appendix to Revised Statutes of Florida, page 1010. This act reads as follows: "That the State and county taxes assessed by the Comptroller of the State of Florida upon any railroads and the properties thereof in said State for the years 1879, 1880 and 1881, under and in pursuance of 'An act to provide for the assessment and collection of taxes on railroads, and the properties thereof, for the years 1879, 1880 and 1881, as to which there was no assessment,' but which have not been collected, shall be col-

lected, and the payment thereof enforced at the same times and in the same manner as is now or may hereafter be provided by law for the collection and the enforcement of the payment of taxes assessed upon the railroads and the properties thereof in the State of Florida. Section 2. That this act shall take effect immediately after its passage.''

Various objections were made in the bill of complaint to the proceedings to enforce the collection of the taxes claimed by the State. Among other things which are insisted upon, and which it is necessary for us to determine, it was alleged, substantially, (1) that Chapter 3558, above set out in full, was obnoxious to the provisions of the Constitution of the United States forbidding States to pass laws impairing the obligations of contracts, and to similar provisions in the Constitution of the State of Florida; (2) that it is a special law for the collection of taxes for State and county purposes, and obnoxious to the provisions of the Constitution of the State of Florida, that it does not provide for a uniform assessment of all omitted property, and is discriminating in the mode of payment; (3) that the act was incomplete in itself, is retrospective, and interfered with vested rights; (4) and it is also claimed, in effect, that at the time the predecessors of the claimant, and through whom it claims, acquired the property assessed, the years 1879, 1880 and 1881 had expired, that the taxes now sought to be collected had not been assessed against it, that the State had no lien upon it for the said taxes, and that the right of complainant to the property is superior to the claim of the State for the taxes sought now to be collected by a sale of the property. (5) It is also alleged in the bill of complaint that the exemption of railroads from taxation under the eighteenth section

·of the Internal Improvement act enured to the complainant because at the time of the purchase of the road by its predecessors through whom it claims title, such exemption from taxation was the law of the property as declared by the Supreme Court of the State of Florida.

The greater portion of the argument of counsel for appellee, upon the alleged conflict between the act of 1885, Chapter 3558 laws of Florida, and the Constitu· tion of the United States and of the State of Florida, is based upon the assumption that the exemption provided for by the 18th section of the Internal Improvement act attached to the railroad property as an incident of the same, and was a contract by the State for a continuing exemption of the property in the hands of whosoever might acquire the same.   As already stated, since the decision of the case of Louisville & Nashville R. R. Co. vs. Palmes, in the Supreme Court of the United States, the proposition contended for has been so finally settled that it is no longer open to dis-·cussion in this State.

It is also contended by appellee that the act, Chap-·ter 3558, *supra*, interferes with the vested rights ·claimed of exemption from taxation of the complainant's property, because those rights accrued, under a judicial construction declaring that the exemption from taxation provided for in the 18th section of the Internal Improvement act, attached to the property as ·an incident without regard to changes in the ownership ·of the same.   This contention is supported by refer-·ence to the opinions of this court in the cases of Allen vs. Atlantic & Gulf R. R. Co., 15 Fla. 637, delivered ·at the June Term, 1876, and Genzales vs. Sullivan, 16 Fla. 791, delivered at the June Term, 1878.   The first ·mentioned case did not, but the latter case undoubtedly

did construe the act in question as claimed by appel-
lee. Such construction continued to stand until over-
ruled by the case of Palmes vs. Louisville & Nashville
R. R. Co., 19 Fla. 231, decided at the June Term, 1882,
and affirmed by the Supreme Court of the United
States in Louisville & Nashville R. R. Co. vs. Palmes,
109 U. S, 244, decided in November, 1883.

In effect, the complainant says that while it may be
that the railroad property sought to be sold for the
taxes for the years 1879, 1880 and 1881, was really sub-
ject to taxation in those years, yet it had been by a
mistaken construction of the law declared not liable to
taxation, and that the complainant, relying upon such
construction, and upon faith of the exemption from
taxation, had contracted and invested its money in the
property. In this case it is unnecessary to determine
what effect a change of judicial decision will have
upon contracts made, while a former and different con-
struction of the law prevailed. In reading the cases
of Palmes vs. Lovisville & Nashville R. R. Co., and
Louisville & Nashville R. R. Co. vs. Palmes, *supra*,
it is evident that only one phase of the liability to
taxation of the property in dispute was before the
court and involved in its adjudication. The only point
of non liability decided in Gonzales vs. Sullivan was,
that the exemption provided for in the Internal Im-
provement act attached to the property and continued
as an incident of it after its transfer from the original
owners and builders. The more important and vital
question, as to whether a corporation coming into ex-
istence since the adoption of our Constitution of 1868
could hold such property as exempt, was not deter-
mined in the Gonzales-Sullivan case; nor has it ever
been determined in any other case by this court.
Therefore, that one branch of the question had been

determined in favor of the complainant's contention can not avail it in this controversy. Of what value was it to complainant that the exemption from taxation under the statute passed with the property, if it and its predecessors were such corporations as were prohibited by the Constitution from holding the property as exempt? The same contention here presented was also made in the case of Louisville & Nashville R. R. Co. vs. Palmes, (sec. 109 U. S. 244, text page 255 *et seq.*) In that case it was urged that the Louisville & Nashville Railroad Company had acquired its title after the decision of this court in Gonzales vs. Sullivan, and may be presumed to have acted upon the faith of such decision. The court, however, held the property liable to taxation, and one of the principal reasons alleged therefor was that the effect of the provisions of the Constitution of 1868 upon the capacity of a corporation created after its adoption to accept the privilege and benefit of the exemption was not raised or adjudged in Gonzales vs. Sullivan. The complaint and its predecessors through several antecedent transfers were corporations organized since 1868, and could not avail themselves of any exemption from taxation. Louisville & Nashville R. R. Co. vs. Palmes, *supra;* Keokuk & W. R. Co. vs. County Court of Scotland County, 41 Fed. Rep. 305.

Another matter is worthy of attention in considering the effect of the judicial construction of the statute from which the complainant claimed his privilege of exemption from taxation accrued. By reference to the bill of complaint and to the act (Chapter 1646 laws of Florida, pamphlet laws of 1868, page 143; McClellan's Digest, 1006) it will be seen (in the preamble to the act found in the original, not in McClellan's Digest) that at the time of the passage of the act, July

29th, 1868, William E. Jackson and his associates were the owner of that portion of complainant's line of railroad which extends from Jacksonville to Lake City. They had purchased the same at a sale made by the Trustees of the Internal Improvement Fund, as the property of the Florida, Atlantic & Gulf Central Railroad Company, and by the act referred to Jackson and his associates were vested with the powers and franchises granted said last named corporation, and were incorporated under the name of the Florida Central Railroad Company. Said Jackson and associates accepted such act of incorporation, and in such corporate name owned and operated such line of railroad. The sixth section of said act of incorporation reads as follows: "That nothing in this act shall be so construed, nor shall it be so operative, as to divest the State of the right to make the said Florida Central Railroad, and all its property of every sort, character and description, the subject-matter of taxation on the part of the State." Whatever might be said as to other portions of complainant's line of road, as to which similar statutory provisions were not in existence, there could, in the face of this section, be no reasonable ground for belief that this especial portion of the line was exempt from taxation. As this section had never been construed by this court, and the question of the liability of this portion of the line to taxation, had not been determined, we see no reason for an assumption that a judicial construction of a statute should become a rule of property of a line of railroad, the liability of which to taxation must depend wholly or in part upon a statute which has never been construed.

The complainant says further, in effect, that at the time its predecessors purchased the property the taxes claimed had not been assessed against it, that there

was no lien in favor of the State for such taxes, and the act upon which the proceedings to collect taxes are being taken, was not upon the statute book, and that it acquired the property free of the State's claim for taxes. It contends upon this view of the facts that its right or title to said property is superior to any claim or right of the State to subject the same to the payment of the back taxes claimed against it; that if such back taxes can be assessed and collected at all, it could only be against the owners of the property during the years for which taxes are claimed, and can not be so collected from its purchasers, or by sale of the same. That if the statute intended to create a lien upon the property in the hands of purchasers for value, it would, to that extent, deprive its owners of their property without due process of law, and would be unconstitutional. This contention presents some complicated and difficult questions. All property in the State ought to bear its just burden of public taxation, and there can be no doubt, because it is well established by authority, that if property, lawfully liable thereto, escapes taxation for any one or more years, that it is competent for the Legislature to provide for the collection of such taxes in arrears. Perry and Hale Counties vs. Selma, Marion & Memphis R. R. Co., 65 Ala. 301; Perry County vs. Selma, Marion & Memphis R. R. Co. (and other cases); 58 Ala. 546; Tallman vs. City of Janesville, 17 Wis. 71; North Carolina R. R. Co. vs. Commissioners of Alamance, 82 N. C. 259; Burroughs on Taxation, 483. There is no doubt of the authority to collect such back taxes from the owners of the property during the time from which it escaped taxation, or from purchasers of the same whose rights or titles accrued after a lien for such taxes had been acquired by the State, by subjecting the property taxed to the payment of

the same.   If the State has the power to pursue property for the payment of taxes when it has ceased to be in the possession or ownership of the persons to whom it belonged during the time for which such assessment was made, in the hands of innocent purchasers for value, such power must arise from some specific charge or lien upon the property in favor of the State for the taxes thereon.   The question therefore arises, whether the complainant is such innocent purchaser for value.   We do not think that the time for the assessment and collection of the taxes has passed, and the taxing statute affixes no lien to the property, the State has made no assessment, or taken any other step to collect the same, that real estate can be pursued for back taxes when it has gone into the hands of innocent purchasers for value.   The property sought to be taxed in this case is by the law of this State real estate. McClellan's Digest, sec. 30, p. 286, Chapter 3099 Laws of Florida, act of 1879, sec. 3, p. 17.   Under our laws as they existed prior to the Revised Statutes there was no lien upon such property for its taxes until fixed by an assessment of the same.  Spratt vs. Price, 18 Fla. 289, text 301, *et seq.;* L'Engle vs. Florida Central & Western R. R. Co., 31 Fla. 353.  The only exception to this rule is that provided in various revenue acts, in effect, that assessors might assess real estate which had escaped taxation for any of the preceding years, not exceeding three, and that such land should be liable for such back taxes in whosoever hands they might come.   Both parties agree that this provision is not applicable to the present case.   We do not think the power of the State to subject the property in question to the payment of the back taxes claimed by the State

46

rests upon the basis of a lien upon the property which enables the State to reach it in the hands of innocent purchasers for value. We do not think, under the facts of this case, that the complainant below is shown to be an innocent purchaser for value. In other words, it does not appear that it purchased the property after the time for the assessment and collection of the taxes had passed without any assessment or other effort on the part of the State to collect such taxes. We will, as briefly as is consistent with clearness, state the facts upon which these views are announced, together with some principles of law applicable thereto.

As different portions of the property rest upon different bases of fact, we will have to separate them in such statement. First, we will examine the nature of the title of the complainant to the line extending from Jacksonville to Chattahoochee, with branches to Monticello and St. Marks. For present purposes, it is only necessary to trace this chain of title to the acquisition of the property by Edward J. Reed and associates, in September, 1879. Their title was acquired at a sale on foreclosure of a statutory lien on behalf of the State against the Jacksonville, Pensacola & Mobile Railroad Company. The property was owned and operated by said Reed and associates, but under what firm or corporate name is not shown by the record, until February 8, 1882. On this date Reed and his associates organized a corporation under the general laws of the State of Florida, under the name of the Florida Central & Western Railroad Company, and on the 28th of February, 1882, conveyed the property to said corporation. An inspection of these articles of incorporation on file in the office of the Secretary of State of the State of Florida

shows that Reed and his associates were incorporated as the same persons who had purchased the property at said foreclosure sale. This corporation, in February, 1884, was, with other companies, consolidated into the Florida Railway & Navigation Company. This latter corporation owned the property until May, 1889, and during the time the assessments complained of were made. The complainant acquired title through a purchase by one W. B. Cutting, as agent, at a judicial sale of the property; said Cutting and associates organized the complainant corporation. The complainant bought and took possession, with the assessments upon the property. We concede, however, that complainant would not be bound by such assessments, if they had been illegal as against the Florida Railway & Navigation Company, its immediate predecessor. Therefore the inquiry arises, whether the Florida Railway & Navigation Company was such innocent purchaser as we have hereinbefore stated could hold the property as against the State's claim for taxes. The only changes which had occurred in the ownership of the property, between the time of its acquisition by Reed and his associates in September, 1879, and its assessments for taxation, were by a sale by the persons organizing a corporation to the corporation composed of themselves, and by a consolidation of the corporation owning it into another corporation of which it remained a constituent part until the assessments were made. It would be defeating the State of its taxes upon the merest technicality to hold that such transfers of the property as these constituted an innocent purchaser, as the transferees, Reed and his associates, came into the ownership of the property in September, 1879. At this date the time under the then existing

laws had not expired when the State might assess and collect the taxes from the property. Secs. 45, 46, pp. 30, 31, acts of 1879, Chapter 3099. They took the property when it was liable to taxation for 1879, and. held it while it became and was liable for the taxes of 1880 and 1881. These taxes, while not liens upon the property, were obligations due by the owners and for which the property might be made liable. Can this obligation and liability be discharged by the transfer of the property by the owners as individuals to themselves in a corporate capacity? We think not; such transfers are more nominal than real. In the case of Western Division of the Western North Carolina R. R. Co. vs. Drew, Governor, etc., 5 Woods (C. C.), 691, text 701, a question somewhat similar arose, in which it was determined that where persons holding as individuals railroad property subject to a lien, passed the title to a corporation composed of themselves clothed with corporate power, the lien was not thereby divested. 1 Morawetz on Private Corporations, sec. 239, thus states the same principal: "If an association of persons owning property subject to equitable claims obtains an act of incorporation, the property will remain subject to those claims after it is vested in the corporate name. * *" To similar effect also is Beach on Private Corporations, sec. 797. We have not been able to find a case where the precise question here involved (*i. e.*, the liability for taxes of property transferred by an association of persons to themselves as a corporation) has been adjudicated. We find a number of cases where it has been held that such a transfer would not relieve the property of liability for an indebtedness contracted by the association which afterwards became a corporation. The case of Hancock

JANUARY TERM, 1895. 725

Bloxham, Comp., et al. v. F. C. & P. R. R. Co.—Opinion of Court.

vs. Holbrook, 40 La. Ann. 53, 3 South. Rep. 351, was a case where the stockholders of a corporation, through the medium of an individual who was not a stockholder, bought property at a judicial sale in the name of the corporation, and immediately conveyed the same to a new corporation composed of the same stockholders and the individual through whom the property was purchased. The court (text, page 61), speaking upon the contention that the property in the hands of the new corporation was not liable for the debts of the company, says: "The new corporation was simply the Herald Company *plus* Holbrook, as evidenced by the glaring fact that its stock, except that assigned to Holbrook, was distributed without other consideration among the Herald stockholders in exact proportion to their stock therein. The proposition that the stockholders of a corporation can buy property in its name on credit, immediately thereafter form a new corporation in which their interests are the same and based on no new consideration, transfer the property bought to the new corporation, and then hold it free from any liability to the vendor or creditors is one which can not be sustained in reason or by authority. It is perfectly plain that the new Picayune Company, *quoad* this property, stood in the shoes of the Herald Company and was bound for the latter't debt to the extent of its value." To similar effect also are Brum vs. Merchants' Mutual Insurance Co., 16 Fed. Rep. 140, S. C. 4 Woods, 156; Blair vs. St. Louis, Hannibal & Ceekuk R. R. Co., 22 Fed. Rep. 36; Georgia Ice Company vs. Porter & Meakin, 70 Ga. 637. In the case of Hibernia Insurance Co. vs. St. Louis & New Orleans Transportation Co., 13 Fed. Rep. 516, S. C. 4 McCrary, 432, upon this subject it is aptly said: "It is the duty

of the court to examine the whole transaction, and to cut through mere paper transfers designed to obstruct or destroy the rights of parties. The evidence sufficiently discloses that the new corporation was a mere continuance of the old, with substantially the same parties in interest—a mere change of name. Whether that change, with attendant transfers, was designed or not to defeat all outstanding demands of the old corporation, it is evident that substantially the two corporations are the same, and that the new must respond to the obligations of the old.  *  *  A mere change of name can not avoid obligations. The new corporation took all the property of the old, went forward with its business, had the same stock holders, except a few formal ones, was, in short, the old corporation, and now seeks to escape the obligations of the old, rescuing the property of the latter from the demands the former was bound to meet. Can this be done? The old corporation and its property were liable to the demands of the plaintiff. The new corporation must respond to the extent of the property acquired, and possibly to the full extent; that is, if property sufficient therefor is in its possession." The principles announced in the cases cited were in proceedings to collect debts. A tax upon property, technically speaking, is not a debt. Ordinarily an action of assumpsit and recovery of judgment does not lie thereon; yet it is an obligation to the State for which the owner and the property are liable. It is the highest obligation which can rest upon property. Without the power to enforce the obligation, law and order could not be maintained, and all the functions of government would be practically suspended. We know of no reason why the rights of the State in the pursuit of alienated property subject to taxation

should not rest upon as high, if not higher, grounds as the rights of an individual who seeks satisfaction of a private debt out of the same property. Respectable authority maintains the doctrine that the claim of the State for taxes is paramount to the claim of other creditors, and should be first paid, and that the property might be seized by the State. This was in a case where the property had been assigned for the benefit of creditors. State vs. Rowse, 49 Mo. 586.

The next point requiring demonstration is, that the Florida Railway & Navigation Company did not become an innocent purchaser by reason of the consolidation of the Florida Central & Western Railroad Company into it. This consolidation was accomplished by virtue of the statutes—sec. 27, p. 285, and sec. 37, p. 288, McClellan's Digest. . The statutes under which the consolidation was made makes no provision as to the payment of the debts and liabilities of the constituent companies which, by the consolidation, become absorbed into a new corporation. Neither does it appear by the bill of complaint, nor the articles of incorporation on file in the office of the Secretary of State, that any provision of this kind was made in such articles. In such a state of affairs all the authorities seem to agree that unless the statute or articles of consolidation make express provision therefor, the new corporation assumes all the debts and liabilities of the constituent companies. In the absence of express statutory provision, or an assumption by agreement of the new company, the debts and liabilities of the original companies follow as an incident of the consolidation, and become by implication the obligations of the new corporation. Columbus, Chicago &

Indiana Central Ry. Co. vs. Powell, 49 Ind. 37; Jeffersonville, Madison & Indianapolis R. R. Co. vs. Hendricks, 44 Ind. 48; Louisville, New Albany & Chicago Ry. Co. vs. Boney, 117 Ind. 501, 20 N. E. Rep. 432; Berry vs. Kansas City, Ft. Scott & Memphis R. R. Co., 52 Kansas, 774; 3 Wood's Railway Law, sec. 486; Tomlinson vs. Branch, 15 Wall. 460; The Delaware Railroad Tax Case, 18 Wall. 206; Central Railroad & Banking Co. vs. Georgia, 92 U. S. 665. In Western Division of the Western North Carolina R. R. Co. vs. Drew, Governor, etc., 5 Woods (C. C.) 691, text 701, the court, speaking of the consolidation of two railroad companies, one of which had a lien upon its property, says: "This consolidation, by which the two companies joined their properties together, did not discharge the lien. The property of the Tallahassee company was brought into the common concern with all pre-existing equities attaching thereto. The consolidated company having, as one of its component parties, the Tallahassee company, which held subject to the lien, can not be regarded as a *bona fide* purchaser without notice. The notice with which that company was affected, in relation to the property brought with it into the common fund, affected also the consolidated company." While we have found no case, and none has been pointed out to us by counsel, upon the express point of the liability of a consolidated corporation for the taxes due the State from one of its constituents, whose property it had received into a common corporate fund, yet there are numerous cases holding the liability of the consolidated corporation for the debts and obligations of its constituent companies. What has hereinbefore been said as to the high degree of the obligation that rests upon persons and

property for taxes due the State has equal application to the present matter. A corporation from whom taxes are due the State can not defeat the collection thereof by vesting its property subject to such taxes in another corporation, of which the defaulting corporation remains a component part.

In ascertaining the title of the complainant to the line of railroad from Fernandina to Cedar Keys, it is necessary only to go as far back as a judicial sale, made in certain proceedings in the United States Circuit Court for the Northern District of Florida, in a suit between one Doggett, Receiver, and the Atlantic, Gulf & West India Transit Railroad Company. The bill does not allege the date of this alleged sale, but it appears with certainty that it was before the year 1881 and probably before the year 1879. Applying that rule by which all allegations in a pleading are taken most strongly against the pleader, we are warranted in construing the bill as alleging this sale as occurring before 1870. It does not clearly appear by what corporate name the road was operated after this purchase. The property was purchased at the sale mentioned by E. N. Dickerson and C. D. Willard; who organized a corporation with the same name as that which had formerly owned it. The bill alleges that this company's name was changed in 1881 to the Florida Transit Railroad Company. But it also alleges that the company under the old (not the new) name was, in December, 1882, consolidated, with other corporations, into the Florida Transit & Peninsular Railroad Company. This last named company was likewise consolidated, with others, into the Florida Railway & Navigation Company, in February, 1884. The com-

plainant acquired title to the property at the same time, in the same manner, that it acquired the line from Jacksonville to Chattahoochee and its branches, and what was said in reference to the effect thereof is equally applicable to the present matter.

There is some variance as to what lines are advertised for sale, as stated in the allegations contained in the body of the bill of complaint, and in the sheriff's advertisement attached to the bill of complaint and made an exhibit to and part thereof. Three lines advertised by the sheriff are (1) that from Jacksonville to Chattahoochee, (2) Fernandina to Tampa, and (3) Waldo to Cedar Keys. In the bill the line is described as from Fernandina to Cedar Keys. The line leading southwest from Fernandina branches into two lines at Waldo, one of which branches leads to Cedar Keys, and one leads to Tampa. The latter branch in the bill of complaint is described as several different roads built by different companies, as follows: Line F, Waldo to Ocala, built in 1877 by the Peninsular Railroad Company, and line G, Ocala to Wildwood, built in 1881 by the Tropical Florida Railroad Company. These companies were consolidated, in 1882, with another company, into the Florida Transit & Peninsular Railroad Company. This latter company, as we have before seen, was consolidated into the Florida Railway & Navigation Company in February, 1884. The first of these lines, that from Waldo to Ocala, is liable to the payment of the taxes sought to be enforced against it, for reasons already stated. The line from Ocala to Wildwood is alleged to have been built in 1881—what period of said year is not stated. Acting upon a rule of construction already announced, we construe this

allegation as showing that it was built early enough in the year 1881 to be subject to taxation for that year, and taxes for that year only can be collected from it. The line K, from Wildwood to Plant City, was built in 1887; and the line M, from Plant City to Tampa, was built in 1891. The latter lines were not in existence during the years 1879, 1880 and 1881, and can not be taxed for years that passed away before they were built; neither can they be subjected to sale for payment of taxes due upon other railroads, by reason of the accidental circumstance that they have become the property of the same corporation that owns the roads liable to taxation. The statute of 1885, under which these assessments were made, refers only to railroads which were in existence during the years named, and ought to have been assessed for taxes during these years, but were not so assessed. Several other lines of road are described in the bill of complaint, but there is no allegation or showing that they are advertised or sought to be subjected to taxes of 1879, 1880 or 1881, and we need not further discuss them.

Another objection to the proceedings to collect the taxes involved herein is, that the act of 1885, under which the assessments were made, is a special law for the collection of taxes for State and county purposes, and obnoxious to the provisions of the Constitution of 1868, in force at the time the act was passed. The portion of this Constitution with which the act is claimed to be in conflict is the provision in the seventeenth section of Article IV, forbiding the Legislature to pass special or local laws for the assessment and collection of taxes for State, county and municipal purposes. The eighteenth section of the same article provides.

that in such cases all laws shall be general and of uniform operation throughout the State. Is the act in question a general or special law? If the first, it is constitutional and valid; if the latter, it is unconstitutional and void. This court has passed upon the general question, as to what constitutes a special law, within the meaning of the provision of the Constitution prohibiting such laws, in the case of *ex parte* Wells, 21 Fla. 280. It there held that an act providing that whenever any city or town, incorporated under the general municipal corporation act, approved February 4th, 1869, is indebted to the amount of two hundred thousand dollars, and has defaulted, and still defaults, in the payment of its interest account, the charter of said city or town shall be and is hereby declared to be repealed, and the corporation thereof dissolved, was not a special law, within the prohibition of sections 17 and 18 of Article IV of the Constitution of 1868, but was a general law. In this case the court approved definitions previously laid down by the Supreme Court of Pennsylvania as follows: "A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition." It might be that the railroads of the complainant is the only property affected by the act. Such a state of affairs would not make it a special law. Speaking upon a similar contention this court has also quoted with approval, in the case of *ex parte* Wells, *supra*, from the Supreme Court of New Jersey, the following language: "A law so framed (*i. e.*, general in its terms) is not a special or local law, but a general law without regard to the consideration that within the State there hap-

pens to be but one individual of the class or one place where it produces effects." It has also been said, as applied to statutes, that the word general, as distinguished from special, means all of a class, instead of part of a class. 23 Am. & Eng. Ency. of Law, p. 148 and authorities cited. In the case of McAunich vs. Mississippi & Missouri R. R. Co., 20 Iowa, 338, it is said, speaking of statutes of this character: "These laws are general and uniform, not because they operate upon every person in the State, for they do not, but because every person who is brought within the relations and circumstances provided for, is affected by the law. They are general and uniform in their operation upon all persons in like situation, and the fact of their being general and uniform is not affected by the number of persons within the scope of their operation." To same effect is Iowa Railroad Land Co. vs. Soper, 39 Iowa, 112, in which a number of cases are collected; also Coal Run Coal Company vs. Finlen, 124 Ill. 666, 17 N. E. Rep. 11, and State vs. Yard, 42 N. J. L. 357. The act in question is general in its terms. It embraces all of a class—all railroads in a similar condition—and is not in conflict with the constitution.

The bill also alleges, in substance, that the act complained of was enacted to reach only property of the class of complainant; that other properties of large values and lands elsewhere in the State were improperly omitted from assessment for taxes for the years 1879, 1880 and 1881, and that no act has been passed to reach such property; that the act complained of does not attempt to secure a just valuation and assessment of all classes of property. These objections do not show any constitutional infirmity in the act. The fact

that the statute does not embrace all classes of owners and of property, omitted from taxation for the years mentioned, would not, under the definitions given, make the act a special law. Neither does the Constitution require that every tax act shall provide for the just valuation and assessment of all classes of property. These objections apply, not to the constitutionality, but only to the policy, the justice and the wisdom of the law. The relief from such legislation must come from the legislative, not the judicial, department of the government. The courts are bound to uphold the statutes, unless they are clearly in conflict with the Constitution.

From what has been said herein, it follows that the lines of railroad of the complainant from Jacksonville to Chattahoochee, with St. Marks and Monticello branches, the line from Fernandina to Cedar Keys, and the line from Waldo to Ocala, are subject to the taxes sought to be collected from them. The line from Ocala to Wildwood is subject only to such taxes for the year 1881. The lines above mentioned, except that from Ocala to Wildwood, are the ones in existence and assessed by Barnes, Comptroller, as alleged.

The decree of the Circuit Court holding the lines of railroad described therein as subject to taxation in 1882, 1883, 1884, 1885 and 1886, and refusing injunction against the assessment and collection of taxes thereon for 1886, and refusing to direct return of taxes paid for 1882, 1883 and 1884 by the Florida Railway & Navigation Company, is affirmed, except that portion which holds the line from Ocala to Tampa subject to taxation as aforesaid. Only that part of the latter line which extends from Ocala to Wildwood was sub-

ject to such taxation.    The decree is reversed in so far as it makes subject to taxation, for the years named, that portion of the line from Ocala to Tampa, described in the bill of complaint as the line from Wildwood to Plant City, and the line from Plant City to Tampa. So much of said decree as holds that the statute under which the assessment was made, and under which proceedings are being taken by the defendants to collect taxes of the complainant, is a special statute for the collection of general revenue, and unconstitutional and void, is reversed.    So much of the decree of the Circuit Court as holds that the several lines of railroad sought to be subjected to the payment of taxes herein was not assessable against the Florida Railway & Navigation Company for the years 1879, 1880 and 1881, and which enjoins the defendants from selling or attempting to sell the same, under the assessment aforesaid, or any part thereof, for the taxes for said years, or from in any manner interfering with or attempting to collect said taxes, is reversed.    Said decree should have enjoined the collection of taxes only upon the following portions of the property so levied upon, to-wit: that portion levied upon and advertised by the defendants as the line from Jacksonville to Tampa, which is described in the bill of complaint as the line from Wildwood to Plant City and the line from Plant City to Tampa.    The defendants might likewise have been properly enjoined as to the taxes for the years 1879 and 1880, upon the line from Ocala to Wildwood.